[No. 23621. Department One. May 4, 1932.]

MAGNUS HANSEN, *Appellant,* v. JOHN LINDSTROM *et al.,*
*Respondents.*[1]

[1]Reported in 11 P. (2d) 232.

*Meier & Meagher,* for appellant.

*Wm. J. Conniff,* for respondents Lindstrom *et al.*

*McClure & McClure,* for respondents Dumbleton *et al.*

PARKER, J.—This action was commenced in the superior court for Clallam county by the plaintiff, Hansen, seeking the quieting of his title as against the claims of the defendants, Lindstrom and wife, to the west 50 feet of block 25 of Puget Sound Cooperative Colony's Second Addition to Port Angeles. Hansen holds the record title to lot 9 of the block, which he claims is the west 50 feet thereof. The defendants, Lindstrom and wife, claim interest in the west 50 feet of the block under a contract of purchase of lot 8 of the block from the interveners, Dumbleton and wife, who are the record owners thereof; which lot 8 both the Lindstroms and Dumbletons claim is the west 50 feet of the block. They seek the quieting of their interest in and title thereto accordingly.

The cause, being of equitable cognizance, proceeded to trial in the superior court sitting without a jury, resulting in a decree denying to Hansen any relief sought by him and awarding to the Lindstroms and Dumbletons the relief sought by them; the decree reciting, in part: "That there is no lot 9 in block 25, and that lot 8 of said block 25 is the westerly 50 feet of said block." From this disposition of the case in the superior court, Hansen has appealed to this court.

On January 19, 1889, the Puget Sound Cooperative Colony, a corporation, existing under the laws of the territory of Washington, duly executed a plat, subdividing a tract of 111.36 acres owned by it into lots, blocks, streets, avenues and alleys. The endorsements then made upon the plat, outside the drawing showing

the lots, blocks, streets, avenues and alleys, read, in so far as need be here noticed, as follows:

"PUGET SOUND COOPERATIVE COLONY'S SECOND ADDITION TO PORT ANGELES

"Description

"The land comprised in this addition are known as Lots 3 and 4 of Section 10 in Township 30 North Range 6 West Wil. Mer., Clallam County, Washington Territory, and containing 111 36/100 acres. Laurel, Lincoln, Chase, Peabody and Vine Streets are intended to be in line with and be extensions of streets of the same name on the original townsite and of the same width. San Juan, Orcas, Lopes, Whitby and Vashon Avenues are each 70 ft. wide. Grand Avenue on the north and Julia Street on the south are 33 ft. wide each. All alleys are 20 ft. wide. Lots are 50'-0" by 140'-0". Blocks 1, 6 and 11 are 300 ft. by 315 ft. Blocks 16, 21, 22, 23 and 25 are angular in form, and of the sizes shown on the plat. All other blocks are 300 ft. by 500 ft.

"Dedication

"Know all men by these presents, That the Puget Sound Cooperative Colony, a corporation under the laws of Washington Territory, have and by these presents does donate and dedicate to the use of the public forever, the streets, avenues and alleys designated and laid out upon this plat of said corporation's Second Addition to the Townsite of Port Angeles, Clallam County, Washington Territory." (Here follow appropriate signing, sealing and acknowledgment evidencing due execution of the plat by the cooperative colony.)

The plat was received and made of record by the auditor, he indorsing the record so made as follows:

"Filed for record at request of Thos. Malony January 22nd, 1889, at 11 o'clock A. M. and recorded on page 12 of Book 1 of Plats records of Clallam Co., Wash. Ty. WILLIAM K. CLARK,

"County Auditor."

There is no designation upon any portion of the drawing of the plat of any monument upon the ground;

nor is there any mention of any such monument in the description or dedication language accompanying the plat, except as Government lots 3 and 4 are monuments fixing the outer boundaries of the whole of the addition upon the ground.

The west boundary of the plat runs north and south. The south boundary runs east and west. The east boundary runs north and south, and the northerly boundary runs from the northeast corner in a straight line several degrees north of west to the northwest corner. This results in block 25, in that corner, and other blocks on the north side of the addition, not being parallelograms, though their southwest and southeast corners are right angles.

All of the full blocks are 300 feet wide north and south, including the alleys, and 500 feet long east and west. This appears, as we have noticed, by the language of the description. It is conceded that block 25 and other blocks on the northerly side of the addition, except the one farthest east, are also 500 feet long east and west. This is also made plain by the side lines of the north and south platted streets. Blocks 1, 6 and 11, each less than 500 feet long, are on the east side of the addition. While in the description we read: "Lots are 50'-0" by 140'-0"," this manifestly is true only as to lots which are parallelograms in blocks or parts of blocks which are also parallelograms; and is not true as to lots in block 25 and lots in other blocks on the north side of the addition.

Block 25, shown upon the plat as recorded, has therein nine lots, numbered from east to west. Lot 1 is marked upon the plat as being 120 feet wide. Lot 2 is marked upon the plat as being 70 feet wide, and lot 3 is marked upon the plat as being 60 feet wide. Thus it appears that those three lots occupy the east 250 feet

of the block. Lots 4, 5, 6, 7, 8 and 9 do not have their respective widths shown.

On February 25, 1889, the Puget Sound Cooperative Colony conveyed by duly executed deed "all of fractional block 25 of the Puget Sound Cooperative Colony's Second Addition" to Olaf J. Anderson. By mesne conveyances from Anderson, Hansen ·acquired record title on September 25, 1911, to lot 9, which title has remained in him ever since. By mesne conveyances from Anderson, the defendants Dumbleton and wife acquired record title on July 21, 1913, to lots 7 and 8 of that block, which title has remained in them ever since.

Hansen has paid taxes assessed against lot 9 by the taxing authorities of Clallam county each and every year from the time of his so acquiring title to that lot until the commencement of this action by him in February, 1931. The Dumbletons have likewise paid taxes assessed against lots 7 and 8 by the taxing authorities of Clallam county each and every year from the time of their so acquiring title to those lots until the commencement of this action by Hansen in February, 1931. The west 50 feet of block 25 has never been in the actual, physical possession of anyone until near the time of the commencement of this action, when the Lindstroms commenced to erect a building thereon.

For several years prior to the commencement of this action, there had been from time to time some conflicting claims of ownership of the west 50 feet of block 25, asserted, however, only orally, pro and con, as to whether or not lot 9 had any legal existence upon this plat, though lot 9 appeared thereon. as the plat was placed and has remained of record since the year 1889. That controversy grew out of assertions that the original plat, as executed by the company, showed block

25 as containing only eight lots, and that it was incorrectly recorded as containing nine lots. However, there is nothing in the record before us in the slightest degree suggesting that any legal steps were ever taken by anyone to correct such claimed erroneous recording of the plat. Hansen did not learn of any such claim until the year 1920, some nine years after he had acquired his deed to lot 9.

Territorial statutory provisions relating to the execution and recording of town plats and additions thereto, in force at the time of the execution and recording of this plat, are to be found in sections of the territorial code of 1881, as follows:

"Sec. 2328. Any person or persons, who may hereafter lay off any town within this territory, shall, previous to the sale of any lots within such town, cause to be recorded in the recorder's office of the county wherein the same may lie, a plat of said town, with the public grounds, (if any there be,) streets, lanes, and alleys, with their respective widths properly marked, and the lots regularly numbered, and the size stated on said plat.

"Sec. 2330. Every person hereinafter laying off any lots in addition to any town, shall, previous to the sale of such lots, have the same recorded under the like regulations as are provided for recording the original plat of said town, and thereafter the same shall be considered an addition thereto.

"Sec. 2331. Every person whose duty it may be to comply with the foregoing regulations shall, at or before the time of offering such plat for record, acknowledge the same before the recorder of the proper county, or any other officer who is authorized by law to take the acknowledgment of deeds, a certificate of which acknowledgment shall be, by the officer taking the same, endorsed on or annexed to such plat and recorded therewith.

"Sec. 2727. He must, upon the payment of his fees for the same, record separately, in large and well-bound separate books in a plain hand: . . . (9)

Such other writings as are required or permitted by law to be recorded.

"Sec. 2728. . . . He [auditor] shall also keep a well-bound book in which shall be platted all maps of towns, villages, or additions to the same, within the county, together with the description, legend, acknowledgment or other writing thereon. He shall keep an index to such book of plats, which shall contain the name or names of the proprietor of such town or village, or addition, and the name of the town, village or addition.

"Sec. 2731. When any instrument, paper or notice, authorized by law to be recorded, is deposited in the county auditor's office for record, that officer must . . . , and must record the same without delay, together with the acknowledgments, proofs and certificates written upon or annexed to the same, with the plats, surveys, schedule and other papers thereto annexed, in the order and as of the time when the same was received for record, . . .

"Sec. 2732. He must also endorse upon such instrument, paper or notice, the time when and the book and page in which it is recorded, and must thereafter deliver it, upon request, to the party leaving the same for record, or to his order."

We are not aware that any of these statutory provisions have ever been repealed. They may now be found embodied in Rem. Comp. Stat., §§ 9288, 9289, 9290, 10601, 10603, 10606 and 10607.

The outstanding features of these statutory provisions, which we regard as of controlling force in our present inquiry, are: (1) That the plat is to be made of public record by recording it in the plat book; and (2) that the auditor must, after recording the plat, "deliver it upon request to the party leaving the same for record or to his order;" thus plainly evidencing the law to be that the plat, as recorded in the plat book, shall constitute the statutory, public record, and notice of the existence of the plat and its contents.

This manifestly results in there being nine lots in block 25 of this plat. We see nothing upon its face or in its endorsements, as recorded, lending substantial support to the view that any one of the designated lots should be excluded therefrom. How the 500 foot length of block 25 shall be apportioned between the nine lots so appearing in that block, we shall presently consider.

 It is contended that our conclusion should be that there are only eight lots in the block, and that lot 9 should be excluded because of the evidence which, it is claimed, shows that the plat, as actually executed by the cooperative colony, contained but eight lots; that is, but five lots to the west of lots 1, 2 and 3, each of which has a designated width in feet upon the recorded plat. No other error is claimed in the plat as recorded.

It seems to us that one effectual answer to this contention is that all of the deeds of conveyance in the chain of title from the cooperative colony to Hansen described the property as "fractional block 25 of the Puget Sound Cooperative Colony's Second Addition to Port Angeles," or as lot 9 of block 25 of that addition; and all of the deeds of conveyance in the chain of title from the cooperative colony to the Dumbletons described the property as "fractional block 25 of the Puget Sound Cooperative Colony's Second Addition to Port Angeles," or as lots 7 and 8 of block 25 of that addition. These deeds manifestly show an intent to convey according to this plat, as recorded. There never has been any other official plat.

The above quoted statutory provisions plainly contemplate that, previous to the sale and conveyance of the lots, a plat thereof must be duly executed and recorded. It seems difficult to conceive a more effectual

adoption of a recorded plat than this adoption by the several grantors according to this plat as recorded. Our decisions are plain to the effect that such conveyances constitute an adoption of such a plat made of record, by all such grantors as a part of the description of the property intended to be conveyed. *Moore v. Walla Walla,* 2 W. T. 184, 2 Pac. 187; *Kenyon v. Knipe,* 2 Wash. 394, 27 Pac. 227, 13 L. R. A. 142; *Meacham v. Seattle,* 45 Wash. 380, 88 Pac. 628.

As to the evidence which, it is claimed, points to the erroneous recording of the originally executed plat, we note that Hansen did not have any knowledge of any such claim of erroneous recording having been made by any one until some nine years after he had purchased and received conveyance of lot 9. The original plat was not produced upon the trial. When it was taken from the office of the auditor after recording, is a matter of much uncertainty. In any event, the evidence rather plainly shows that it cannot now be found.

There was introduced in evidence in behalf of the Lindstroms and Dumbletons a blue print which, upon critical examination, seems to us to clearly not be a print of any originally executed plat. This seems to us to be rendered plain upon an examination of the purported signatures of the officers of the cooperative colony, as compared with their admitted signatures on other documents in evidence, and the purported seal of the notary, which is manifestly a print of a pen copy of a notary's seal. This blue print, it seems to us, is plainly a print of a copy of a plat, like the recorded plat, it is true, save block 25 is shown thereon as containing only lots 1 to 8 inclusive. Two witnesses orally testified that they had seen the originally executed plat several years ago, and that it showed block 25 as containing only lots 1 to 8, inclusive.

But we need not further notice the question of whether or not lot 9 was or is in fact shown upon the original plat. We think it is enough for our present purposes to know that lot 9 is shown upon the plat as recorded, and as that plat has remained of record now for more than forty years in the plat book of the records of Clallam county.

Some contention is made as against the claim of title of Hansen, rested upon the fact that, in the chain of title to lot 9 leading from the cooperative colony to him, there is a sheriff's deed by which one of the intermediate owners lost title to the property, being one of the mesne conveyances under which Hansen claims title to lot 9. It is not claimed that this sheriff's deed failed to vest in the grantee therein named the entire interest of the judgment debtor upon which that deed rests. So it seems plain to us that Hansen's present title to lot 9 is not in the least impaired by the fact that that mesne conveyance happens to be a sheriff's deed issued in satisfaction of a judgment rendered against a mesne grantee in Hansen's chain of title.

Our conclusion that lot 9 does, in fact and in law, exist in block 25 renders it necessary for us to make further inquiry touching the width of that lot. We have noticed that lots 1, 2 and 3 are each, respectively, 120, 70 and 60 feet wide, plainly so designated on the face of the plat, while lots 4 to 9, inclusive, have no designated width, either upon the face of the plat or in the endorsements thereon. Therefore, it seems plain that, since lots 1, 2 and 3 occupy, by specific notation thereon, the east 250 feet of the block, it must follow that the lots 4 to 9, inclusive, occupy the west 250 feet of the block; it being conceded and manifestly appearing from the plat as a whole that the block is only 500 feet long.

Thus we have the west 250 feet of the block to be divided among lots 4 to 9, inclusive. They appearing to be of substantially equal width and none of them having any designated width noted thereon, we think it follows that the true width of lot 9 must be determined to be one-sixth of the west 250 feet of block 25, that is, 41 2/3 feet, which is the west 41 2/3 feet of block 25. This apportionment, of course, is only conclusive as to the east boundary of lot 9 as between the parties to this action. There may be some adverse possession or other conditions than are here involved, of controlling effect as to other boundaries within block 25.

The applicable law, we think, is well stated in the leading case of *McAlpine v. Reicheneker*, 27 Kan. 257, as follows:

"Third. If no monuments were set, except theoretically on paper, the proper location of those monuments will be determined by pro-rating the distances as given in the records, according to the length of frontage of the several allotments.

"Fourth. If the actual computed sum of the length of the several allotments as given exceed the length of the tract partitioned, it will be construed that the decree means that upon the hypothesis that the entire length of the whole tract is as stated, then the length of each assignment shall be given; but if it be less, the assignments of allotments must lose in like proportion."

This rule was recognized by us in *Booth v. Clark*, 59 Wash. 229, 109 Pac. 805, Ann. Cas. 1912A 1272, wherein we quoted, with approval, from 5 Cyc. 973, as follows:

"Where a tract of land is subdivided and is subsequently found to contain either more or less than the aggregate amount called for in the surveys of the tracts within it, the proper course is to apportion the excess or deficiency among the several tracts."

See, also, *Pereles v. Magoon,* 78 Wis. 27, 46 N. W. 1047, 23 Am. St. 389; *Toudouze v. Keller,* 118 S. W. (Tex. Civ. App.) 185; *Coppin v. Manson,* 144 Ky. 634, 139 S. W. 860; *Porter v. Gaines,* 151 Mo. 560; *Brewster v. Bulow,* 296 S. W. (Mo.) 372; *Barrett v. Perkins,* 113 Minn. 480, 130 N. W. 67.

We conclude that the decree must be reversed, and a new decree rendered by the superior court quieting in Hansen his title to the west 41 2/3 feet of block 25 as constituting lot 9 of that block. The cause is remanded to the superior court, with directions to render its decree accordingly.

Hansen is entitled to his costs incurred in the prosecution of his appeal.

TOLMAN, C. J., BEELER, MITCHELL, and HERMAN, JJ., concur.