VAN DEVEN and wife, Appellants, v. HARVEY and wife, Respondents.*

*December 3, 1959—January 5, 1960.*

* Motion for rehearing denied, with $25 costs, on March 8, 1960.

126

For the appellants there was a brief and oral argument by *Walter A. John* and *George J. Mangan,* both of Milwaukee.

For the respondents there was a brief by *Snyder, Mantyh & Arndt* of Milwaukee, and oral argument by *William J. Mantyh.*

BROADFOOT, J. Upon the trial the original drawing of the plat by the surveyor, R. C. Reinertsen, was introduced in evidence. He had continued his work as a surveyor until 1915, when he sold his business and all of his records to a successor. The surveyor for the defendants, as a successor in interest, had all of the original records in his possession.

The figures upon the original drawing in black ink corresponded with the recorded plat. However, the original drawing showed some additional figures in red ink. The length of the north boundary of lot 24 on the original drawing was marked in black ink as 45.96 feet. Underneath that figure in red ink appeared the figures 47.38.

In order to establish the authenticity of the drawing there was introduced in evidence the affidavit of Donald J. Reinertsen, son of the original surveyor. He had worked with his father until 1915. The son was not called as a witness but the affidavit was received under a stipulation that if he were called as a witness he would testify to the statements made in the affidavit. The son stated that the figures in red ink upon the original drawing were in the handwriting of the original surveyor, R. C. Reinertsen.

The trial court based his decision in this case on an inference he drew from the figures in red ink that appeared thereon. In his memorandum decision the trial court said:

"The evidence disclosed that the recorded plat here in question was made in 1892 by a surveyor named R. C. Reinertsen. The latter is now deceased.

"The survey notes attached to the affidavit of Donald J. Reinertsen, and marked document 'B,' clearly indicate that the surveyor who originally prepared the recorded plat not only knew of the existence of the overage but actually allocated and placed it in lot 24.

"While it is true that the said Donald J. Reinertsen, if he were called as a witness, would testify that he does not know when said R. C. Reinertsen made the red and black numerals contained in document 'B,' nevertheless it does appear that said numerals were made in the handwriting of said R. C. Reinertsen.

"The appearance of document 'B' clearly indicates that it is a very old document. It contains survey notes prepared by said R. C. Reinertsen of the block in question. It is safe to infer, in the absence of direct evidence, from the circum-

stances present that document 'B' was made by said R. C. Reinertsen prior to the preparation of the recorded plat which was prepared in 1892. There would be no reason for making these notes after the completion and recording of the plat.

"In any event, whether we assume that document 'B' was prepared prior to 1892 or prior to 1915, it was made by R. C. Reinertsen, and it is obvious from said document, and the court finds, that the original surveyor included the overage in question in lot 24. The difference between the numerals 45.96 appearing in black ink in the square containing 'lot 24' and the numeral 47.38 appearing in red ink in the same square is 1.42, the exact amount of the overage here in question."

The trial court also stated that the overage of 1.42 feet in the block was located in lot 24 according to the intention of the original surveyor and subdivider. We cannot agree with the trial court that the exhibit supports an inference that the surveyor effectively placed the overage in lot 24. There is no testimony that the subdivider ever knew of the mistake in the measurement. Any inference as to the intention of the original subdivider is based upon the inference as to the intention of the surveyor. When we speak of the subdivider we refer to the owner of the tract that was subdivided. If the mistake had been discovered in 1892 or soon thereafter and had been called to the attention of the subdivider, the matter of the overage could have been settled very easily at that time.

Our determination requires a reversal of the judgment.

In the trial court the plaintiffs urged the application of the apportionment rule, a well-known rule that is often applied when there is a variance between the actual measurements of a subdivision and the measurements of the lots therein as shown by the recorded plat. The leading case in Wisconsin is *Pereles v. Magoon,* 78 Wis. 27, 46 N. W. 1047. Also see 97 A. L. R. 1227, where the *Pereles Case* is cited in a

footnote along with other Wisconsin cases. In the *Pereles Case* this court said (p. 31) :

"This court has repeatedly held, in effect, that where a piece of land is subdivided into lots, and a plat of the subdivision recorded, and the actual aggregate frontage of such lots is *less* than is called for by the plat, the deficiency must be divided among the several lots in proportion to their respective frontage as indicated by the plat. *Jones v. Kimble,* 19 Wis. 429; *O'Brien v. McGrane,* 27 Wis. 446; *Westphal v. Schultz,* 48 Wis. 78. This is certainly not inconsistent with sec. 770, R. S. These cases have been cited approvingly in a recent case in Kansas, where it is held that, 'on a line of the same survey, and between remote corners, the whole length of which is found to be variant from the length called for, it is not to be presumed that the variance was caused from the defective survey in any part, but it must be presumed, in the absence of circumstances showing the contrary, that it arose from imperfect measurement of the whole line; and such variance must be distributed between the several subdivisions of the line in proportion to their respective lengths.' [Citations.] The same principle maintains where the actual measurements are in excess of the dimensions specifically designated upon the plat, as in case of a deficiency."

The trial court discussed the apportionment rule at length in a carefully written memorandum decision. He cited authority to the effect that there are exceptions to the rule. He determined that it could not be applied in this case for three reasons, which he stated to be as follows :

"That the 'apportionment rule' cannot be applied in this case because none of the owners of lots 1 to 22, inclusive, in block 8 are parties to this action.
"That, in any event, to apportion the overage of 1.42 feet among all the owners of the lots in block 8 would involve a change of the occupational boundary lines of all of said lots and result in encroachments of buildings, fences, driveways, and hedges upon adjacent lots.

"That to apply the 'apportionment rule' in this case would result in allocating a small fraction of an inch of said overage to the defendants' lot and allowing the remainder of said overage to go to the plaintiffs by default since none of the owners of the remaining lots in said block 8 are before the court."

As authority for his first reason he cited a statement in 11 C. J. S., Boundaries, p. 737, sec. 124. In footnotes sustaining the contention C. J. S. cited a California, Indiana, and Illinois case. The trial court quoted from the California case, *Hoffman v. Van Duzee,* 19 Cal. App. (2d) 517, 65 Pac. (2d) 1330.

We cannot agree with the first reason given by the trial court. In the case of *O'Brien v. McGrane,* 27 Wis. 446, and the *Pereles Case,* and in Wisconsin cases in which the *Pereles Case* has been cited as shown by Shepard's Wisconsin Citations, that rule has not been followed. In the case of *Wiegman v. Alexander,* 4 Wis. (2d) 118, 90 N. W. (2d) 273, 91 N. W. (2d) 335, it appeared that an adjoining landowner would be directly affected. We did not say that adjoining landowners must be made parties but did state that they would not be bound by any decision made in the action. Apparently that is as far as this court has gone in holding that all other owners in a tract would have to be made parties to an action if the apportionment rule is to be applied. The other lot owners in the block were not necessary parties to the action, but the decision herein is not binding on them.

The second and third reasons given by the trial court are valid reasons for not applying the apportionment rule in detail as requested by the plaintiffs. The surveyor for the defendants testified that he had checked all of the occupational lines between the various lots in the block. Some were marked by fences, some by hedges, and other physical evidence. In line with the occupational boundaries, which

corresponded with the frontages shown on the recorded plat when measured from lot 1 eastward, he found crosses chipped in the sidewalk in front of the properties. Upon the west side of lot 23, owned by the plaintiffs, was a fence that corresponded almost exactly with the location of that line as shown on the recorded plat when measured from the west. There was evidence that these occupational boundary lines and the corresponding crosses had been there for some time.

There was further evidence of a cross in the walk at a point 47.38 feet west of the northeast corner of block 8 that apparently at one time marked the boundary between lots 23 and 24. Except for the agreement entered into in 1938, that would have constituted evidence that the boundary line between the two lots had been established at that point. However, the agreement negated the effect of this evidence.

Upon this record, and with the understanding that none of the other lot owners are bound by this decision, it is apparent that the boundary lines between all of the lots, except those of the plaintiffs and the defendants, have been established. Whether this was done by adverse possession or by agreement we cannot tell from this record. Lines can be established by oral agreement or by implied agreement if followed by acquiescence and possession. 1 Patton, Titles, (2d ed.), p. 425, sec. 159; 11 C. J. S., Boundaries, p. 635 ff., sec. 63. Because of the time element involved, because the lots are improved and occupied, and because of evidence of the establishment of the boundaries up to the division between lots 23 and 24, a strict application of the apportionment rule would be inequitable in the manner pointed out by the trial court. Allotting a fraction of an inch to each lot owner could only cause confusion.

The evidence of the fence on the west line of the plaintiffs' property is justification for the third reason given by the trial court. If a fraction of an inch of the overage is allotted to the defendants the plaintiffs, so far as this record

is concerned, could retain the balance of the overage. Plaintiffs have sought the equitable powers of the court. The inequitable result that would follow the strict application of the apportionment rule is evident and is justification for not applying the rule as requested by the plaintiffs.

Upon this record and with our desire to make it clear that the other lot owners in block 8 are not bound by this judgment, we can only apply the apportionment rule as between the parties to this action, allotting one half of the overage to the plaintiffs and the remaining half to the defendants. The northernmost part of the boundary between the two lots then is fixed at a point 46.67 feet west of the northeast corner of block 8.

It is apparent from our determination that the curb constructed by the predecessors in title of the plaintiffs will encroach upon lot 24. Provision for its removal should be made in the judgment to be entered herein.

*By the Court.*—Judgment reversed. Cause remanded with directions to enter a judgment in conformity with this opinion. No costs to be taxed by either party upon this appeal except that the appellants shall pay the clerk's fees.

MARTIN, C. J., took no part.