[No. 25929-6-I. Division One. August 26, 1991.]

DAN REITZ, ET AL, *Respondents,* v. DAREL WAYNE KNIGHT, *Appellant.*

---

576

*Howard K. Todd*, for appellant.

*William N. Snell* and *Jonson & Jonson, P.S.*, for respondents.

AGID, J. — Darel Knight appeals a judgment entered in a boundary dispute between him and his neighbor, Dan Reitz. He contends that the trial court used improper procedures to determine the boundary, failed to consider his adverse possession claim, and improperly admitted documentary evidence. He also contends that the court erred in denying his motion to dismiss for failure to join necessary parties. We reverse in part and affirm in part.

In 1976, Knight purchased a house situated on two Lake Washington waterfront lots. Reitz purchased the house and two lots directly north of Knight's property in late 1979 or early 1980. From 1980 until 1986, Reitz rented this house to others; he and his wife began living there in August 1986.

Shortly after Reitz moved into his Lake Washington house, he and Knight became embroiled in a property line dispute. In late 1986, Knight hired Sprout Engineers, Inc. (Sprout) to survey the property and establish the boundary line between his and Reitz' property. Sprout discovered two significant facts: (1) the 1904 plat map for block A of C.D. Hillman's Lake Washington Garden of Eden plat, the block containing Knight's and Reitz' lots, did not specify a width for block A's southernmost lot, lot 36; and (2) the actual length of block A exceeded that indicated on the plat map by 20 to 40 feet, depending upon the width assigned to lot 36.

Based upon lot size patterns in other blocks of the Garden of Eden plat, Sprout assigned lot 36 a width of 42 feet. This left 28 feet of excess land within block A. Sprout apportioned this excess proportionately among the 36 lots, and concluded that the Knight-Reitz boundary line fell 4 feet north of Knight's foundation.

Reitz did not like the results of the Sprout survey. Under the Sprout apportionment, Reitz' northern property line lay under his neighbor's foundation. Reitz realized that this was not feasible, and concluded that his northern boundary would have to be defined by the placement of his neighbor's home. The net result of this was to reduce the total footage of Reitz' two lots from the 70 feet indicated on the plat map to 67.6 feet.[1]

Reitz then retained Meriwether Leachman & Associates, Inc. (Meriwether) to perform another survey. Meriwether assigned a 35-foot width to the undimensioned lot 36. He then attempted to apportion the remaining excess property among the 36 lots of block A. Meriwether concluded that apportionment was not a proper way to establish boundary lines because the newly established lines encroached into existing improvements. Meriwether apparently then set Reitz' northern boundary at the chimney of his neighbor to the north. Measuring southward from this line, Meriwether concluded that in order for Reitz' property width to meet its platted width of 70 feet, the disputed property line must lie 1 inch north of Knight's chimney.

Reitz filed a complaint to quiet title and for determination of the disputed property boundary in accordance with the Meriwether survey. He named Knight, Knight's ex-wife, and the bank holding a deed of trust on Knight's property as defendants. In his answer, Knight counterclaimed for a boundary determination in accordance with the Sprout survey, for an equitable boundary determination under RCW 58.04.020, or for adverse possession of

---

[1]According to the plat map, each of Knight's and Reitz' two lots was 35 feet wide.

the 2.4-foot-wide disputed strip. Knight also asserted that Reitz' complaint should be dismissed for failure to join necessary parties.

At trial, Knight moved for dismissal pursuant to his claim that Reitz failed to join necessary parties. The trial judge denied his motion. The trial judge also rejected Knight's adverse possession claim, saying in the midst of Reitz' closing argument: "I don't think this is an adverse possession case, period." The judge ruled in Reitz' favor, holding that the Meriwether survey should determine the Knight-Reitz property line. Knight moved for reconsideration, focusing particularly on the trial court's rejection of his adverse possession claim. The trial court denied Knight's motion, and this appeal followed.

## SURVEYING PROCEDURES

The trial court concluded that the Meriwether survey was preferable to the Sprout survey because it did not apportion the block's extra footage and therefore did not affect other property lines within block A. Knight contends that this was error and that apportionment is the only proper means of determining property lines when, as here, plat measurements are inaccurate.

■■ As a general rule, if it is discovered that a tract contains more or less land than the area assigned to it in the original plan, any excess or deficiency should be apportioned among all of the subdivided tracts or lots in proportion to their areas. W. Robilard & L. Bouman, *Surveying and Boundaries* § 12.01 (5th ed. 1987); 11 C.J.S. *Boundaries* § 124 (1938); 12 Am. Jur. 2d *Boundaries* § 63 (1964); Annot., *Rights as Between Grantees in Severalty of Lots or Parts of the Same Tract, Where Actual Measurements Vary From Those Given in the Deeds or Indicated on the Map or Plat*, 97 A.L.R. 1227 (1935); *accord, Hansen v. Lindstrom*, 168 Wash. 130, 140-41, 11 P.2d 232 (1932). As with any rule, however, this general rule is subject to

exceptions. One such exception, which the trial court relied on here, is the "rule of possession".[2]

Under the "rule of possession", an apportionment of an excess or deficiency of land will not be made when to do so would disturb long-established occupational lines or would otherwise be impractical or inequitable. *Pompano Beach v. Beatty*, 177 So. 2d 261, 263 (Fla. Dist. Ct. App. 1965); *Allen v. Mount Morris*, 32 Mich. App. 633, 189 N.W.2d 120, 121-22 (1971); *Alston v. Clinton*, 73 N.M. 341, 388 P.2d 64, 68 (1963); *Van Deven v. Harvey*, 9 Wis. 2d 124, 100 N.W.2d 587, 590-91 (1960). In this situation, the location of the boundary line in dispute is determined by apportioning the excess or deficiency between the parties actually involved in the boundary dispute, *Alston*, 388 P.2d at 68; *Van Deven*, 100 N.W.2d at 591-92; or by resort to basic common law doctrines for determining boundaries, namely, adverse possession, parol agreement, estoppel in pais, location by a common grantor, and/or mutual recognition and acquiescence. *Van Deven*, 100 N.W.2d at 591; Washington State Bar Ass'n, *Real Property Deskbook* § 63.5 (2d ed. 1986).

Here, there is ample evidence in the record indicating that resort to apportionment in the instant case would have disturbed existing occupation lines in block A. Consequently, the trial court correctly ruled that apportionment was not the proper means to resolve the boundary dispute between Reitz and Knight. We therefore uphold that part of the trial court's ruling rejecting the Sprout survey.[3]

---

[2]Another exception that could have been applied in this case is the "remnant rule". The remnant rule applies when the subdivider declares the dimensions of each lot except the last and thus leaves an irregular, undimensioned space. In this situation, all excess or deficiency in land is assigned to the undimensioned lot, on the theory that this was the intent of the grantor or platter. *E.g.*, Robilard & Bouman § 12.20; 12 Am. Jur. 2d, *supra* at 601; 11 C.J.S., *supra* at 738-39; 97 A.L.R., *supra* at 1232-33. Here, every lot in block A of the plat at issue has an assigned width except the southernmost lot, lot 36. Under the remnant rule, lot 36 would receive all excess property and no apportionment among the remaining 35 lots would be necessary.

[3]In support of his apportionment argument, Knight relies on *Staaf v. Bilder*, 68 Wn.2d 800, 415 P.2d 650 (1966). *Staaf* does not change the propriety of

## ADVERSE POSSESSION

Knight next challenges the trial court's rejection of his adverse possession claim. He contends that the court did not properly consider the claim, that its finding entered on that claim is not supported by the evidence, and that it erred in concluding that he had failed to prove adverse possession. We agree with these contentions.[4]

■ First, the trial court should not have decided Knight's adverse possession claim until it decided where the disputed property line was located. Until the line was established, there was no way the court could determine whether Knight had exercised possession of any property that the court concluded actually belonged to Reitz. The fact that the parties previously may not have known the true boundary is irrelevant. For purposes of an adverse possession claim, the nature of possession is determined by the manner in which the parties treated the land, not by their subjective belief regarding their true interests in the land. *Chaplin v. Sanders*, 100 Wn.2d 853, 861, 676 P.2d 431 (1984) (overruling cases which held that one could not adversely possess property when the true owner of the property was unknown).

---

rejecting the apportionment method in this case. It simply stands for the general proposition that a court should attempt to determine the intent of the platter. 68 Wn.2d at 803. This is not, however, a rigid rule that must be followed when, as here, apportionment would place boundaries under existing structures and invite further litigation to resolve the untenable result reached by apportioning the excess property. *See Staaf*, 68 Wn.2d at 803-04 (noting that intervening equities override platters' intent).

[4]The trial court ruled during closing argument that it would not consider adverse possession, and Knight did not call any of these issues to the court's attention during trial. He did, however, make extensive arguments in support of his adverse possession theory in his motion for reconsideration. These arguments were based on evidence presented at trial. They were, therefore, properly before the trial court and were preserved for appellate review. In a nonjury trial, an issue or theory not dependent upon new facts may be raised for the first time through a motion for reconsideration and thereby be preserved for appellate review. *Newcomer v. Masini*, 45 Wn. App. 284, 287, 724 P.2d 1122 (1986).

■ Second, the trial court's finding concerning lack of evidence of adverse possession is not supported by the record. Although a trial court's findings must be upheld if supported by substantial evidence, *e.g., Staaf v. Bilder*, 68 Wn.2d 800, 803, 415 P.2d 650 (1966), here no evidence supports most of the court's finding on Knight's adverse possession claim, and in fact the evidence is directly contrary to many of its assertions. The court found:

> Defendant Darel Wayne Knight's counterclaim of adverse possession to a strip of land south of the northern boundary line shown on the Sprout Survey was based on the location of a few plants under the eaves of Mr. Knight's residence. The plants were not located or maintained in such a manner as to establish a discernible boundary line or indicate physical occupation. The plants were not exclusively maintained by Mr. Knight and were not located in the disputed boundary area for a period of ten years. No corroborating evidence was presented to support the counterclaims.

■ The finding's first sentence enjoys no evidentiary support, as Knight's counterclaim was based on more than "a few plants under the eaves". On more than one occasion, Knight offered evidence that since 1958, the eaves of his house have extended 7 inches over the boundary line established by Meriwether. In his motion for reconsideration, Knight specifically argued that an encroachment such as that made by the eaves of his house is a means of acquiring title by adverse possession. *See El Cerrito, Inc. v. Ryndak*, 60 Wn.2d 847, 853-54, 376 P.2d 528 (1962); *Erickson v. Murlin*, 39 Wash. 43, 80 P. 853 (1905). Such encroachment almost necessarily is exclusive, actual and uninterrupted, open and notorious, hostile and made under a claim of right. *Erickson*, 39 Wash. at 45; *see also Chaplin*, 100 Wn.2d at 857.

The finding's third sentence, that Knight did not exclusively maintain the plants at issue and that they were not in place for 10 years, also enjoys no support. Reitz expressly disavowed ever caring for the plants, and

Knight testified that since acquiring the property in 1976, he is the only person who maintained them. Knight also testified that the plants had been alongside his house when he first talked to the previous owner, and when he acquired possession in August 1976, and that the plants remained in place until at least 1986, when he removed many of them for a remodeling project.

The finding's final assertion that Knight did not offer corroborative evidence of adverse possession is belied by several photographic exhibits showing his rather substantial plantings and the extension of his house and eaves beyond the chimney next to which the boundary line was placed.

Finally, the finding's statement that the plants were not located or maintained in such a manner as to establish a discernible boundary line or indicate physical occupation appears to be based on a misapprehension of the law. It is enough to establish adverse possession in this type of case that the party claiming ownership held, managed, and cared for the property. *Butler v. Anderson*, 71 Wn.2d 60, 64, 426 P.2d 467 (1967), *overruled on other grounds in Chaplin*, 100 Wn.2d at 861 n.2. The exclusive maintenance of a row of shrubs and plants meets this requirement.

In sum, contrary to the reasoning of the trial court, once the court adopted the Meriwether survey and set the disputed boundary line 1 inch north of Knight's chimney, it created a claim in Knight for adverse possession. The undisputed evidence proves that Knight adversely possessed the property under the eaves and the cantilevered second floor of his house, as well as the property where the shrubs and bushes had been planted. We therefore reverse this aspect of the trial court's judgment and remand to the trial court for entry of judgment amending the Meriwether survey plat map on file with the King

County Department of Records and Elections to reflect Knight's adverse possession claim.[5]

ILLUSTRATIVE EVIDENCE

During Meriwether's testimony, Reitz introduced an exhibit prepared by Meriwether's staff which purported to show how apportionment would interfere with existing improvements on several block A lots. Knight objected to the exhibit on "hearsay grounds". The trial court overruled his objection, and then assured itself that the data on which the exhibit was based was gathered by Meriwether's employees.

On appeal, Knight argues that the trial court erred when it allowed the exhibit, apparently under the business records exception to the hearsay rule. He asserts that the rules governing exhibits specially prepared for trial should control the exhibit's admissibility. Pursuant to the expression of that rule in *Owens v. Seattle*, 49 Wn.2d 187, 194, 299 P.2d 560, 61 A.L.R.2d 417 (1956), Knight argues that this exhibit should not have been admitted because no one testified that it was based on accurate measurements. Under *Owens*, an exhibit specially prepared for trial as substantive independent evidence should not be allowed unless there is preliminary testimony, by one who can be cross-examined, as to the accuracy of the data upon which the exhibit is based. 49 Wn.2d at 194.

■ Knight did not assert this ground for exclusion at trial. His *Owens*-based argument therefore need not be considered. ER 103(a)(1); RAP 2.5(a); *e.g.*, *State v. Collins*, 45 Wn. App. 541, 546, 726 P.2d 491 (1986), *review denied*, 107 Wn.2d 1028 (1987). In any event, we are not persuaded by his contention.

---

[5]Because we rule in favor of Knight's adverse possession claim, we must reject his request for equitable relief under RCW 58.04.020. When adverse possession is successfully interposed as a defense in a boundary dispute case, it is error to resort to this equitable remedy. *Booten v. Peterson*, 47 Wn.2d 565, 569-70, 288 P.2d 1084 (1955), *overruled on other grounds in Chaplin*, 100 Wn.2d at 861 n.2.

■ Although we agree with Knight that the foundation for the exhibit was minimal, in the circumstances of this case that weakness is not dispositive.[6] Meriwether was present to testify and to be cross-examined. His testimony on the problems that would result from apportionment paralleled the problems illustrated by the exhibit. Consequently, to the extent the exhibit was misleading because of lack of foundation, so too was Meriwether's testimony. Knight could attack both on cross examination, and the lack of foundation ultimately went to the weight, not the admissibility, of the exhibit. *Chase v. Tacoma*, 23 Wn. App. 12, 17, 594 P.2d 942, *review denied*, 92 Wn.2d 1025 (1979).

NECESSARY PARTIES

Knight's remaining assignments of error concern the trial court's denial of his motion to dismiss for failure to join necessary parties. He argues that all lot owners on block A had to participate in an action involving apportionment of excess plat footage, and that his southern neighbor, the owner of lot 36, particularly should have been joined.

■ CR 19 requires joinder, if feasible, of persons with an interest relating to the subject of the action who may, if the action continues in their absence, be impaired in their ability to protect that interest. It also requires joinder of those whose absence subjects an existing party to a substantial risk of incurring inconsistent obligations. In the context of boundary line disputes, joinder ordinarily is required only of persons who own property adjacent to the disputed boundary line. *Cady v. Kerr*, 11 Wn.2d 1, 14, 118 P.2d 182, 137 A.L.R. 713 (1941); 12 Am. Jur. 2d § 95; 11 C.J.S. § 101. There are, however, exceptions to this rule. *See generally* Annot., *Necessary or Proper Parties to*

---

[6]Although ordinarily only minimal foundation is required for a purely illustrative exhibit, the problem in this case is that the exhibit was designed to discredit another precisely drawn exhibit, and the trial court was asked to rely on the exhibit to determine that apportionment would not work.

*Suit or Proceeding To Establish Private Boundary Line*, 73 A.L.R.3d 948, § 4[a] (1976).

One exception, recognized in Washington, is that when property lines are uncertain for all owners of shoreline property situated on an irregular cove, all owners are necessary parties to a boundary line dispute. *Seattle Factory Sites Co. v. Saulsberry*, 131 Wash. 95, 98, 229 P. 10 (1924). In that instance, "the proper determination of the true location of any of such boundaries [is] dependent upon the determination of the true location of all of such boundaries." 131 Wash. at 98. A related exception concerns apportionment of an excess or deficiency of property as compared with the area indicated in the original plan or plat. In such a case all owners in the affected block must be joined because "[a] proper allocation of excess or deficiency cannot be made until the owners of all the lots are in court". 11 C.J.S., *supra* at 739; *accord, Johnston v. White-Spunner*, 342 So. 2d 754, 759 (Ala. 1977) (error to apportion excess property without joining subdivision's remaining lot owners); *Nitterauer v. Pulley*, 401 Ill. 494, 82 N.E.2d 643, 648-49 (1948) (allocation of excess or deficiency cannot be made until owners of all lots are in court).

These exceptions do not apply here. Once the trial court correctly determined that apportionment could not be used, it was unnecessary to join the remainder of the block A lot owners because resolution of Knight's and Reitz' boundary dispute did not impact them. For the same reason, joinder of Knight's southern neighbor, the owner of the undimensioned lot 36, was also not necessary. While he or she may still have a claim to the unapportioned property under the "remnant rule" discussed at footnote 2, it was not necessary for the court to decide that issue in this case. Thus, while joinder of the southern neighbor would have been preferable to promote judicial economy, we cannot say that the trial court's denial of a motion to dismiss based on that neighbor's absence from the proceedings was error.

The judgment is reversed in part and the case is remanded for entry of judgment in accordance with this opinion.

GROSSE, C.J., and KENNEDY, J., concur.

Reconsideration denied October 8, 1991.