

**FILED**
**SEPTEMBER 10, 2020**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Parentage of | ) | |
| | ) | No. 37361-4-III |
| G.N.M.-B., | ) | |
| | ) | |
| CHRISTOPHER A. BROWN, | ) | |
| | ) | |
| Respondent, | ) | UNPUBLISHED OPINION |
| | ) | |
| v. | ) | |
| | ) | |
| AUTUMN LAUREL MOZER, | ) | |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Autumn Mozer appeals the final parenting plan entered for her

and Christopher Brown's then-three-year-old daughter. For the first time on appeal, she

raises two procedural challenges to the conduct of the trial. She also challenges the sufficiency of the evidence and the sufficiency of the trial court's findings.

We decline to consider procedural challenges that should have been raised at trial. The evidence and the trial court's findings are sufficient. We affirm.

FACTS AND PROCEDURAL BACKGROUND

Given the nature of the errors assigned on appeal, we review the evidence in the light most favorable to Mr. Brown. When an appellant challenges the sufficiency of the evidence, we look at the evidence and reasonable inferences therefrom in the light most favorable to the respondent. *In re Marriage of Zigler & Sidwell*, 154 Wn. App. 803, 812, 226 P.3d 202 (2010). With respect to Ms. Mozer's procedural challenges, only the procedural history and the law are relevant.

Autumn Mozer and Christopher Brown had a very short-term relationship during which Ms. Mozer became pregnant. When Mr. Brown was informed by her of the pregnancy, he sought counsel from his bishop, who encouraged Mr. Brown to marry her. Mr. Brown and Ms. Mozer attempted a renewed relationship, but it did not work out.

Mr. Brown hired a lawyer and petitioned for establishment of a parenting plan on August 1, 2017. His declaration in support of entry of a plan said that he was seeking "a 50/50 parenting plan" but asked that he be named the custodial parent. Clerk's Papers (CP) at 22. He accused Ms. Mozer in the declaration of withholding the parties' daughter

and of abusive use of conflict. A temporary parenting plan entered in September 2017

reserved the issues of withholding and abusive use of conflict for trial.

A status conference in the parenting plan action was held on May 1, 2018. Mr.

Brown appeared through his lawyer, while Ms. Mozer represented herself. The order on

the status conference, which was entered on May 1, set trial for June 26, 2018. While the

status conference order reflected both parties' expressed intent to call multiple witnesses,

the trial court's order stated said the "[c]ourt is inclined to hear only from the parties, but

will consider other witnesses after an offer of proof." CP at 155. The order required the

parties to appear in person for a settlement conference on June 11. A pretrial order

signed the same day authorized and directed the parties to submit proposed final

pleadings on the first day of trial.

On the day of the pretrial mediation, Mr. Brown's lawyer e-mailed his

submissions to the mediator, with a copy to Ms. Mozer. They included a cover letter

from Mr. Brown's lawyer. The letter explained that the mediator was being provided

with Mr. Brown's originally-filed proposed parenting plan, but also advised that

> [a]t this juncture, [Mr. Brown] will be asking the court that [the parties'
> daughter] live with him full time and Autumn have every other weekend.
> This is because of Autumn's abusive use of conflict throughout the short
> history of the parties parenting together.

CP at 272.

No. 37361-4-III
*In re Parentage of G.N.M.-B.*

At the commencement of what turned out to be a one-day trial, the trial court reminded the parties that at the status conference on May 1, "[w]e had talked . . . about witnesses," and "I . . . indicated that my preference or policy, really, was that I hear from the parties. And then if there are other witnesses that you wish to call, that you make an offer of proof as to that. We have found that to be most effective in our family court cases." Report of Proceedings (RP) at 5. Mr. Brown informed the trial court he would like to call three witnesses—Ms. Mozer, his wife Brenna Brown, and himself.

Ms. Mozer said she would like to call four witnesses—her friends Sarah Crump and Kimberly Pettie, her sister Jennifer Cortez, and herself. When asked what her friends and sister would testify about, Ms. Mozer answered:

> Sarah Crump has been in the same ward, church, as me and [Mr. Brown]. Not only that, she also witnessed some behaviors of [the daughter] since this whole thing has started where we had supervised visits start for [Mr. Brown]. So her declaration's in there, and so is the offer of proof of that she stated that and any kind of information or on character.
>     Jennifer Cortez is my sister, so she has been around the whole time. And, again, there's a declaration in there about things that she had witnessed from [the daughter's] behavior and changes.
>     And then Kimberly Pettie, she's been around since [the daughter]—before [the daughter] was born and when [the daughter] was born. So I do believe that her testimony is going to be very important and a picture of what's happened throughout [the daughter's] life, and she's also met [Mr. Brown].

RP at 10. The trial court told Ms. Mozer she could call one of her witnesses, and it was her choice. Ms. Mozer did not object or otherwise protest.

4

The trial court took the matter under advisement at the conclusion of the trial and entered a memorandum decision approximately a month later. The decision stated that it was based on the trial evidence and argument as well as the court's review of the court file. The memorandum decision was incorporated by reference into its final order and findings for a parenting plan, residential schedule and/or child support. Relevant findings by the trial court and certain undisputed facts are reflected in the following timeline:

| | |
|---|---|
| May 2015 | The parties' daughter is born. |
| May 2015 until September or October 2015 | Mr. Brown does not see his daughter. |
| September or October 2015 | Ms. Mozer begins to let Mr. Brown see their daughter in church. (The parties attended the same church.) |
| December 2015 | Ms. Mozer allows Mr. Brown to have residential time with their daughter. There is no set schedule; it takes place when Ms. Mozer wants it to. |
| June 2016 | Ms. Mozer ceases allowing Mr. Brown to have residential time with their daughter. This stems from her belief that Mr. Brown is not abiding by dietary restrictions recommended by medical professionals; Mr. Brown testified at trial that he did abide by their recommendations. |
| | In the end of June, Ms. Mozer attempts to obtain an ex parte order for protection against Mr. Brown, claiming that she and the parties' daughter were victims of unlawful harassment. The "harassment" identified in her petition was that Mr. Brown was feeding their daughter "whatever he wants" and "[a]fter . . . I ask Chris what he feeds her . . . he belittles me and refuses to answer my question." CP at 109. She admitted in her petition, "I . . . stopped his visitation |

until this situation can be resolved." *Id.* Her petition for the order is denied.

July 2016  A week after denial of Ms. Mozer's first petition for an order for protection, she again attempted to obtain an ex parte order for protection against Mr. Brown, this time alleging she had been the victim of stalking and unlawful harassment. The alleged "stalking" was that Mr. Brown called the police to request welfare checks on the parties' daughter. An attached police report characterized a request by Mr. Brown for a welfare check as follows:

> [Brown's] daughter[']s Mom hasn't gotten her to two visitations now (daughter is 1 YOA) Mother name Mozer, Autumn . . .32 YOA . . . Mother won't answer phone, texts, Facebook, email. [Brown] would like PD to ck [sic] on daughter and then call him.

CP at 130 (some capitalization omitted).

The alleged harassment was that Mr. Brown sent Ms. Mozer a text message asking about their daughter being sent to daycare with a wet diaper and, when Ms. Mozer asked him about what their daughter ate at his house, he allegedly refused to tell her, belittled her, and commented that their daughter would be safer with him. This petition was also denied.

August 1, 2017  Mr. Brown petitions for entry of a parenting plan.

September 2017  Mr. Brown's petition for entry of a parenting plan results in the entry of a temporary parenting plan under which he is given residential time with the parties' daughter every first, second, third, and fifth weekend from Friday at 7:00 p.m. to Sunday at 7:00 p.m.

March 7, 2018  Ms. Mozer moves for an immediate restraining order, asking that Mr. Brown's visitation be limited to supervised visitation once a week for four hours, alleging that the parties' daughter was exhibiting a reluctance to spend time with her father. In orders entered thereafter, Mr. Brown was to temporarily have supervised visits, the parties were to enroll in co-parenting/family therapy by

| | the end of April 2018, and at that time, Mr. Brown's visitation was to revert to that ordered in September 2017. |
|---|---|
| | In entering the final parenting plan, the trial court stated it had reviewed the notes from the visitation supervisor "and did not see anything that caused any concerns." CP at 164. |
| End of April 2018 | When co-parenting/family therapy had not commenced by the end of April, Ms. Mozer objected to reverting to the September schedule and sought clarification. Ms. Mozer agreed that visitation could revert to the September schedule when the parties became involved in counseling in early May. |

During Mr. Brown's direct testimony, he explained his position that Ms. Mozer had withheld their daughter and made abusive use of conflict, and told the trial court he was seeking primary custody and sole decision-making authority for the daughter's education and nonemergency medical care. Ms. Mozer did not object to this testimony. In closing argument, Mr. Brown's counsel reiterated his client's requests for sole decision-making authority on these matters based on abusive use of conflict and withholding. Again, Ms. Mozer did not object.

On July 23, 2018, the trial court issued its memorandum opinion. It gave Mr. Brown sole decision-making authority over the daughter's education and nonemergency health decisions and made Mr. Brown the primary custodian. The final parenting plan and accompanying orders were entered on September 7, 2018. Ms. Mozer, represented by a new attorney, moved for reconsideration. The motion was denied.

No. 37361-4-III
*In re Parentage of G.N.M.-B.*

Ms. Mozer appeals. Her appeal was administratively transferred by Division Two to Division Three.

ANALYSIS

Ms. Mozer makes four assignments of error on appeal. We first address her unpreserved procedural objections before turning to her challenges to the sufficiency of the evidence and the findings.

I.     ANY ERROR IN LIMITING THE NUMBER OF MS. MOZER'S WITNESSES IS UNPRESERVED

Ms. Mozer first assigns error to the trial court's decision that she could call one, but not all, of her proposed witnesses. As a threshold matter, Mr. Brown argues that Ms. Mozer never objected in the trial court to the court's limitation on her witnesses and has failed to demonstrate a basis for raising this issue for the first time on appeal.

"RAP 2.5(a) states the general rule for appellate disposition of issues not raised in the trial court: appellate courts will not entertain them." *State v. Guzman Nunez*, 160 Wn. App. 150, 157, 248 P.3d 103 (2011) (citing *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988)). The rule provides "the trial court an opportunity to correct any error, thereby avoiding unnecessary appeals and retrials." *Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983).

Ms. Mozer characterizes the limitation on her witnesses as a violation of her right to due process, and one exception to RAP 2.5(a)'s general requirement for issue

8

preservation is "manifest constitutional error." RAP 2.5(a)(3). But Ms. Mozer does not demonstrate how the trial court's witness limitation was a constitutional matter (let alone "manifest" error) rather than a matter of admission of evidence, which "is well within the trial court's discretion." *Pub. Util. Dist. No. 1 of Klickitat County v. Int'l Ins. Co.*, 124 Wn.2d 789, 813, 881 P.2d 1020 (1994).

ER 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by," among other considerations, "undue delay, waste of time, or needless presentation of cumulative evidence." "A court may limit the amount of testimony that it will accept." *Residents Opposed to Kittitas Turbines v. State Energy Facility Site Evaluation Council*, 165 Wn.2d 275, 301, 197 P.3d 1153 (2008). A trial court's authority to exclude evidence that has a tendency to waste time is "well established." *Pub. Util. Dist.*, 124 Wn.2d at 813. It is reviewed for abuse of discretion. *Id.* at 813-14.

It is clear from the record that the trial court's concern was that in family law matters, for a party to call more than a couple of witnesses is likely to result in cumulative or otherwise unhelpful testimony, and therefore will waste time. And the trial court never imposed an absolute limit on the number of witnesses Ms. Mozer could call;

it gave the parties two months' advance notice that it would permit additional witnesses supported by an offer of proof.[1]

The only case cited by Ms. Mozer in support of a due process challenge to the trial court's witness limitation that is remotely on point is *Smith v. Fourre*, 71 Wn. App. 304, 306-09, 858 P.2d 276 (1993), and even it is inapposite. That case did not concern a trial court's exercise of its authority to exclude evidence under ER 403; rather, it presented a trial court's decision to grant a motion to dismiss before the plaintiff had rested and without giving any consideration to whatever additional evidence the plaintiff hoped to present. A trial court's exercise of its discretion to admit evidence does not violate a party's due process right to be heard.

In her reply brief, Ms. Mozer suggests that error *was* preserved, because when she answered the trial court's question on the morning of trial about how many witnesses she proposed to call it amounted to a motion, which the trial court then denied. Motions, whether made in writing or orally during a hearing or trial "shall state with particularity the grounds therefor, and shall set forth the relief or order sought." CR 7(b)(1). It is clear from the record that Ms. Mozer was answering questions, not making a motion. And even if her answers could be construed as a motion, she knew that the trial court

---

[1] In addition to creating a record adequate for appellate review, an offer of proof "should inform the [trial] court of the legal theory under which the offered evidence is admissible" and "the specific nature of the offered evidence so the court can judge its admissibility." *Mad River Orchard Co. v. Krack Corp.*, 89 Wn.2d 535, 537, 573 P.2d 796 (1978).

intended to limit witnesses absent a persuasive offer of proof. She never stated with

particularity any ground on which she challenged the limitation.

Error, if any occurred, was not preserved.

II.     ANY ERROR IN ALLOWING MR. BROWN TO PROPOSE PARENTING PLAN TERMS THAT WERE DIFFERENT FROM HIS ORIGINALLY-PROPOSED PARENTING PLAN IS UNPRESERVED

Ms. Mozer argues the trial court improperly allowed Mr. Brown to amend his

parenting plan during closing arguments. She made no objection when Mr. Brown

testified, and his lawyer argued, that the trial court should enter an order that gave Mr.

Brown exclusive decision-making authority on education and nonemergency medical

care, made him the primary custodial parent, and gave him the majority of residential

time once the parties' daughter starts kindergarten. Mr. Brown again argues that any

error was not preserved.

Ms. Mozer makes no attempt to argue that this alleged error had any constitutional

dimension. She argues only that by offering an amended parenting plan at trial, Mr.

Brown failed to comply with RCW 26.09.181(2) and CR 15(a). Her sole response to Mr.

Brown's argument that error, if any, was not preserved, is to point out that she filed a

motion for reconsideration, and "[it is] therefore hard to fathom how Brown can now

argue that the issue was not preserved." Appellant's Reply Br. at 8.

"By bringing a motion for reconsideration under CR 59, a party may preserve an

issue for appeal that is closely related to a position previously asserted and does not

11

depend upon new facts." *River House Dev. Inc. v. Integrus Architecture, P.S.*, 167 Wn.

App. 221, 231, 272 P.3d 289 (2012) (citing *Newcomer v. Masini*, 45 Wn. App. 284, 287,

724 P.2d 1122 (1986); *Reitz v. Knight*, 62 Wn. App. 575, 581 n.4, 814 P.2d 1212 (1991)).

What is preserved, however, is the ability to assign error to *denial of the motion for*

*reconsideration*. *Id.* And the standard of review is less favorable. *Id.* It is less favorable

because "[t]he trial court's discretion extends to refusing to consider an argument raised

for the first time on reconsideration absent a good excuse." *Id.*

Any error in allowing Mr. Brown to advocate for a parenting plan different from

the one he filed with his petition was not preserved. By moving for reconsideration Ms.

Mozer did preserve any error made in denying that motion, but Ms. Mozer has not

assigned error to the trial court's denial of the motion for reconsideration. Ms. Mozer's

brief does not assign error to any *preserved* error.[2]

---

[2] It appears unlikely that an appeal of denial of the motion for reconsideration would have succeeded. The trial court rejected the motion for reconsideration without requiring Mr. Brown to file a response. In rejecting the motion for reconsideration out of hand, the court could have relied on (1) Ms. Mozer having no good excuse for failing to object at trial, (2) her argument was not closely related to a position she had taken at trial, or (3) case law recognizing that trial courts can inferentially deem pleadings amended by proof. *E.g.*, *In re Marriage of Allen*, 28 Wn. App. 637, 643, 626 P.2d 16 (1981).

III.    THE TRIAL COURT'S FINDINGS ARE SUFFICIENT AND SUPPORTED BY SUBSTANTIAL EVIDENCE

Finally, Ms. Mozer contends that the trial court's ultimate findings of abusive use of conflict and withholding were not supported by substantial evidence or sufficient subsidiary findings.

Under RCW 26.09.191(3), a trial court may preclude or limit provisions of the parenting plan if certain factors exist and present a risk that "[a] parent's involvement or conduct may have an adverse effect on the child's best interest." Two factors supporting a limitation on parenting plan provisions are "[t]he abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development;" and "[a] parent has withheld from the other parent access to the child for a protracted period without good cause." RCW 26.09.191(3)(e)-(f).

A finding of abusive use of conflict does not require actual damage. *In re Marriage of Burrill*, 113 Wn. App. 863, 872, 56 P.3d 993 (2002). "[T]he required showing is that a danger of psychological damage exists." *Id.* "[A] finding under RCW 26.09.191(3) requires 'more than the normal distress suffered by a child because of travel, infrequent contact of a parent, or other hardships which predictably result from a dissolution of marriage.'" *In re Marriage of Watson*, 132 Wn. App. 222, 233, 130 P.3d 915 (2006) (quoting *In re Marriage of Littlefield*, 133 Wn.2d 39, 55, 940 P.2d 1362 (1997)).

13

We review "a trial court's rulings on a parenting plan for an abuse of discretion." *In re Parenting & Support of L.H.*, 198 Wn. App. 190, 194, 391 P.3d 490 (2016). A trial court abuses its discretion if its "decision is manifestly unreasonable or based on untenable grounds for untenable reasons." *In re Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). We will uphold a finding of fact if "substantial evidence exists in the record to support it." *Burrill*, 113 Wn. App. at 868. "Substantial evidence is that which is sufficient to persuade a fair-minded person of the truth of the matter asserted." *Katare*, 175 Wn.2d at 35. "[C]redibility determinations are left to the trier of fact and are not subject to review." *Burrill*, 113 Wn. App. at 868.

The trial court's memorandum decision cites three bases for its finding that Ms. Mozer made abusive use of conflict. One was her unsuccessful petitions alleging harassment and stalking. She admitted in the petitions that she was unilaterally withholding visitation because of Mr. Brown's disagreement with her over feeding issues, and she sought court orders that would prevent Mr. Brown from seeing the parties' daughter. Another was her March 2018 motion for a restraining order that initially suspended Mr. Brown's visitation and later prevented him from having anything but reduced, supervised visitation for many weeks—yet notes from the visitation supervisor revealed nothing that caused any concerns. The third was her refusal to let Mr. Brown know where the parties' daughter was when in Ms. Mozer's custody by

14

withholding her address, despite no findings that Mr. Brown had engaged in domestic violence or threatening behavior.

Ms. Mozer's argument challenging the sufficiency of the evidence asks us to accept her self-serving explanations of her actions and motivation. That is not the standard of review. The trial court clearly disbelieved much of Ms. Mozer's testimony. It is for the trial court, not us, to assess credibility. The trial court believed Mr. Brown, who testified that he followed Ms. Mozer's request to use all natural and chemical-free items and had not fed the parties' daughter food that Ms. Mozer said made her sick. Ms. Mozer nonetheless withheld visitation whenever she wanted to and, lacking good cause, sought court-ordered limitations on Mr. Brown's access to the parties' daughter.

We reject Ms. Mozer's argument that her efforts to obtain court-ordered restrictions on Mr. Brown's access to the parties' daughter without good cause were not "use of conflict" because they did not successfully trigger a legal battle. She knew Mr. Brown wanted regular unsupervised visitation. She sought to use the legal system to prevent that. Even when her efforts were unsuccessful, they constituted use of conflict.

The finding that Ms. Mozer withheld access to the parties' daughter for a protracted period without good cause is also supported by substantial evidence. Mr. Brown testified that he made repeated requests for visits that Ms. Mozer simply ignored. She blocked his phone number and blocked him on Facebook. He testified that he asked for a welfare check because during the period when Ms. Mozer was blocking or ignoring

15

all communication, he called the police station and asked about going to Ms. Mozer's home himself to check on their daughter. They counseled against it and suggested that they do a welfare check instead. He testified that he initially tried to file an action for a parenting plan on his own, but concluded that he needed a lawyer. In January 2017 he finished work toward a degree, got a job, and started saving money, which enabled him to hire a lawyer in August 2017. He testified that in the meantime, rather than confront or harass Ms. Mozer, he "followed Christ," who "says be patient," something members of the parties' church were also encouraging him to do. RP at 90. There was evidence from which the trial court could find that each time Ms. Mozer prohibited Mr. Brown from spending time with the parties' daughter, she did so without good cause.

The trial court relied on substantial evidence of a danger of psychological damage to the parties' daughter that is more than the normal distress suffered by a child because of hardships that predictably result from a dissolution of marriage. Both parties testified that there was a period of time when their daughter threw fits during transitions. The fits could reasonably be attributed to not being allowed to establish a routine with her father. The findings are adequate and no abuse of discretion is shown.[3]

---

[3] Ms. Mozer suggests that the only explanation of the trial court's decision is that it applied "friendly parent" reasoning. "Under the 'friendly parent' concept, primary residential placement is awarded to the parent most likely to foster the child's relationship with the other parent." *In re Marriage of Lawrence*, 105 Wn. App. 683, 687, 20 P.3d 972 (2001). The friendly parent concept has been rejected in Washington. *In re*

No. 37361-4-III
*In re Parentage of G.N.M.-B.*

Mr. Brown seeks an award of his reasonable attorney fees on appeal, citing RCW

26.09.140 and arguing that Ms. Mozer's intransigence has subjected him to significant

expense. We decline to award attorney fees.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____        _____
Lawrence-Berrey, J.                              Fearing, J.

---

*Marriage of Rossmiller*, 112 Wn. App. 304, 311, 48 P.3d 377 (2002); *Lawrence*, 105 Wn.
App. at 687-88 (citing *Littlefield*, 133 Wn.2d at 48-49, 49 n.4).

Mr. Brown did not rely on the friendly parent concept at trial and it is not
mentioned or suggested by the trial court's three-page, single-spaced memorandum
opinion. Because there is another explanation for the trial court's decision, we do not
consider this argument further.