[Nos. 38684-1-I; 38846-1-I.    Division One.    May 27, 1997.]

MICHAEL J. HARDY, *Individually and as Representative, Appellant*, v. CLAIRCOM COMMUNICATIONS GROUP, INC., *Respondent*.

MICHAEL LAIR, *Individually and as Representative, Appellant*, v. GTE AIRFONE, INC., *Respondent*.

*Steve W. Berman, Erin K. Flory, Sean R. Matt*, and *Hagens & Berman*, for appellants.

*James L. Magee, Sharon L. Rosse*, and *Graham & Dunn, P.C.*, for respondent GTE Airfone, Inc.

*Robert J. Thomas, Laura J. Buckland*, and *Stokes, Eitelbach & Lawrence, P.S.*, for respondent Claircom Communications Group, Inc.

AGID, J. — Michael J. Hardy and Michael Lair appeal the trial courts' orders dismissing their claims against Claircom Communications Group, Inc., doing business as

AT&T Wireless Services (AT&T Wireless) and GTE Airfone, Inc. (Airfone), respectively, arguing that both courts erred by concluding that their claims are preempted by 47 U.S.C. § 332 and barred by the filed tariff doctrine. We agree with the trial courts that their claims are preempted and barred by the filed tariff doctrine and affirm.

## FACTS

AT&T Wireless and Airfone are both providers of air-to-ground radiotelephone services for passengers on commercial aircraft. The telephones are located in airplane seats and are accessed by credit cards. Customers are charged an access fee plus a per-minute charge to use this in-flight telephone service. The duration of the call is measured in minutes with fractions of a minute rounded up to the next highest minute. Hardy and Lair filed state law claims for negligent misrepresentation, fraud, Washington Consumer Protection Action violations and breach of contract against AT&T Wireless and Airfone respectively. They allege that the companies failed to disclose their billing methods in the promotional materials provided to passengers aboard the aircraft and that neither provider is entitled to the extra amounts billed for unused air time.

On April 19, 1996, Judge Charles V. Johnson dismissed Hardy's action against AT&T Wireless based on his conclusion that Hardy's state law claims are preempted by 47 U.S.C. § 332(c)(3)(A) and barred by the filed tariff doctrine. On May 13, 1996, Judge Sally P. Pasette relied on Judge Johnson's prior order to dismiss Lair's action against Airfone. The parties appealed, and their cases have been linked for purposes of review.

## DISCUSSION

### I. Filed Tariff Doctrine

The filed tariff doctrine arises under the Federal Communications Act, 47 U.S.C. § 151, which requires every common carrier to file and make available for pub-

lic inspection schedules showing all charges for itself and connecting carriers for interstate service, including any classifications, practices and regulations affecting such charges. 47 U.S.C. § 203(a).[1] Section 203(c), entitled "Overcharges and rebates," provides:

> No carrier . . . shall engage or participate in such communication unless schedules have been filed and published in accordance with the provisions of this chapter . . . and no carrier shall (1) charge, demand, collect, or receive a greater or less or different compensation for such communication, or for any service in connection therewith, . . . than the charges specified in the schedule then in effect, or (2) refund or remit by any means or device any portion of the charges so specified . . .

In the event a carrier fails or refuses to comply with these provisions, it is subject to penalties under the Act. *See* 47 U.S.C. §§ 203(e), 204. The Federal Communication Commission (FCC) has exclusive authority to determine and prescribe what are just and reasonable rates and what are just, fair and reasonable classifications, regulations and practices. 47 U.S.C. § 205.

The filed tariff doctrine is a court-created rule designed to make rapid, efficient, nationwide wire and radio communication service available. It has two purposes: preserving the regulating agency's authority to determine whether rates are reasonable and ensuring that the regulated entities charge only those rates that are approved by law. *Arkansas La. Gas Co. v. Hall*, 453 U.S. 571, 577-78, 101 S. Ct. 2925, 2930, 69 L. Ed. 2d 856 (1981); 47 U.S.C. § 151. The duty to file rates with the FCC

---

[1]*See also MCI Telecomms. Corp. v. American Tel. & Tel. Co.*, 512 U.S. 218, 114 S. Ct. 2223, 2225, 129 L. Ed. 2d 182 (1994) (the tariff filing requirement is the heart of the common carrier subchapter of the Communications Act of 1934). The 1934 Communications Act was modeled on the Interstate Commerce Act of 1910, 49 U.S.C. 10101, which incorporates analogous requirements. *MCI*, 114 S. Ct. at 2231.

and to charge only the rates that have been filed is essential to preventing price discrimination and stabilizing rates. *Maislin Indus., U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 126, 110 S. Ct. 2759, 2766, 111 L. Ed. 2d 94 (1990). Thus, the filed tariff doctrine "forbids a regulated entity from charging rates 'for its services other than those properly filed with the appropriate federal regulatory authority.' " *Marcus v. AT&T Corp.*, 938 F. Supp. 1158, 1169 (S.D.N.Y. 1996) (quoting *Arkansas La. Gas*, 453 U.S. at 577). The filed tariff governs the legal relationship between the carrier and the subscriber and the public is conclusively presumed to know the contents of the tariffs. *Maislin*, 497 U.S. at 126, 127 n.9. " '[T]he rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier.' " *Marcus*, 938 F. Supp. at 1169 (quoting *Keogh v. Chicago & N.W. Ry.*, 260 U.S. 156, 163, 43 S. Ct. 47, 49, 67 L. Ed. 183 (1922)). *Cf. Reiter v. Cooper*, 507 U.S. 258, 266, 113 S. Ct. 1213, 122 L. Ed. 2d 604 (1993) ("[t]he filed rate doctrine embodies the principle that a [subscriber] cannot avoid payment of the tariff rate by invoking common-law claims and defenses such as ignorance, estoppel, or prior agreement to a different rate"). For this reason, the courts have held that the filed tariff doctrine bars even claims for misrepresentation or fraud based on a carrier's alleged nondisclosure of a tariff or misleading advertising. *See, e.g., Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 19 (2d Cir. 1994) (applying filed tariff doctrine to bar claims for fraud); *H.J. Inc. v. Northwestern Bell Tel. Co.*, 954 F.2d 485, 494 (8th Cir.) (applying the doctrine to bar RICO fraud claims), *cert. denied*, 504 U.S. 957 (1992); *Marco Supply Co. v. AT&T Communications, Inc.*, 875 F.2d 434, 436 (4th Cir. 1989) (applying the doctrine to bar claims for willful misrepresentation where carrier quoted lower rate); *Marcus*, 938 F. Supp. at 1170 (applying the doctrine to bar claims for deceptive advertising and misrepresentation based on practice of "rounding up"); *Burlington N. R.R. Co. v. Grabber Constr. Supply, Inc.*, 55 Wn. App. 772, 775, 780 P.2d 890

(1989) (applying the doctrine to bar claims for misrepresentation), *review denied* 114 Wn.2d 1004 (1990).

In addition, neither the courts nor the regulatory agency has the power to retroactively alter a properly filed rate. *Arkansas La. Gas*, 453 U.S. at 579 ("It would undermine the congressional scheme of uniform rate regulation to allow a state court to award as damages a rate never filed with the [regulatory agency] and thus never found to be reasonable within the meaning of the Act"). A common carrier may charge no more and no less than its filed rate. From that rule, it follows that any subscriber who pays the filed rate has suffered no legally cognizable injury because the rate is per se reasonable. *Marcus*, 938 F. Supp. at 1170. A customer injured by a carrier's failure to file its rates or by a carrier's failure to charge the filed rate may bring a complaint with the FCC or sue the carrier in federal court. 47 U.S.C. § 207.

The record reflects that both Airfone and AT&T Wireless have tariffs on file with the FCC. According to the declaration of Brenda McNabb, general counsel for Airfone, Airfone has had a tariff on file since February 5, 1992, and has continually maintained its tariff filing in compliance with FCC regulations since that date. The tariff expressly states that charges are measured in whole minutes with fractions rounded to the next highest minute and copies are available to customers on request. Similarly, according to the declaration of David L. Bruner, an AT&T Wireless senior vice president, AT&T Wireless also filed its tariff with the FCC at the commencement of its air-to-ground services. Although its tariff was canceled effective October 6, 1994, by order of the FCC, another tariff was filed March 3, 1995. *See* 47 U.S.C. § 204. It, too, clearly states that charges are rounded up to the next higher minute. Hardy and Lair presented no evidence to the contrary.

Hardy and Lair concede that the filed tariff doctrine would bar any challenge to the reasonableness of the rates themselves. But they argue that it does not preclude their claims because they are specifically challenging the allegedly deceptive advertising practices of AT&T Wireless and Airfone, not the underlying rate.[2] Each, however, argues that AT&T Wireless and Airfone, respectively, "bilks consumers of millions of dollars in illicit charges," and alleges that the customer is entitled to the extra amounts billed for unused air time. Lair's complaint, for example, alleges "Airfone takes millions of dollars in additional charges that it is not entitled to and consumers overpay." Similarly, Hardy's complaint alleges that, because using the service for one second could result in a $2.50 charge, the actual rate is $150 a minute. Both complaints seek an accounting of all monies wrongfully received as a result of the carriers' billing practices. In short, Hardy's and Lair's allegations are such that a court would necessarily have to consider the reasonableness of the rates charged in order to resolve them on the merits. Even assuming Hardy and Lair could prevail on any of their claims, any court-imposed award of damages would by definition result in their paying something other than the filed rate. *See Arkansas La. Gas*, 453 U.S. at 579 (to allow a state court to award as damages a rate never filed with the FCC and thus never found to be reasonable within the meaning of the Act would undermine the congressional scheme of uniform rate regulation); *Burlington N.*, 55 Wn. App. at 775, 778 (barring payment of anything other than the filed rate even where the carrier expressly quoted a lower price to the customer). Significantly, neither Hardy nor Lair alleges that they or any other customer has paid

---

[2]Section 202 applies not just to rates but to "practices" affecting those rates. 47 U.S.C. § 202(a). Although it is unclear whether "practices" includes advertising and promotional materials explaining the basis on which billing occurs, the underlying purpose of establishing uniform nationwide service makes this a question to be decided, in the first instance, by the FCC.

anything other than the filed rate. Both of their claims are thus barred by the filed tariff doctrine.[3]

## II. Preemption

■■ Because the filed tariff doctrine bars Hardy's and Lair's claims, it is unnecessary to reach the question whether 47°U.S.C. § 332(c)(3)(A) provides an additional basis for dismissal of their claims, except for the 5-month period during which AT&T Wireless concededly had no filed tariff in place.[4] Section 332(c) provides in pertinent part:

(3) State preemption

(A) Notwithstanding sections 152(b) and 221(b) of this title, no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service . . .

Congress's intent in enacting 47 U.S.C. § 332(c)(3)(A) was

[t]o foster the growth and development of mobile services that, by their nature, operate without regard to state lines as an integral part of the national telecommunications infrastructure, new section 332(c)(3)(A) also would preempt state rate and entry regulation of all commercial mobile services.

---

[3]This includes any claims for injunctive relief. Because neither Hardy nor Lair claims to have paid anything other than the filed rate, they have suffered no legally cognizable injury and, in the absence of an injury, there is no basis for injunctive relief. *See Marcus*, 938 F. Supp. at 1170. Any claims for injunctive relief against AT&T Wireless would, in any event, be moot. The record reflects that AT&T Wireless's promotional materials now explain the practice of rounding up in connection with billing for calls. The record is insufficient to determine whether Lair's claims against Airfone would also be moot. But we note that the advertisement attached to Lair's complaint explaining how to use the phone on board the plane informs the customer, "For complete rates and billing information simply select 'HELP' from the main menu screen and then look under the category 'Billing.'" This implies that additional information was available on board the airplane regarding the charged rate.

[4]Because Hardy raises this issue in his brief but does not support his argument with citation to any authority, we need not reach it. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (a court need not consider any argument not supported by citation to authority); *State v. Young*, 89 Wn.2d 613, 625, 574 P.2d 1171, *cert. denied*, 439 U.S. 870 (1978) (a court may assume that where no authority is cited, counsel has found none after search). We will briefly consider it, however, in order to completely resolve the matter.

House Report No. 103-111, at 260. Hardy argues, however, that the savings clause embodied in 47 U.S.C. § 414 indicates that Congress did not intend to completely preempt state regulation of interstate communications. That clause provides:

> Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.

The courts have held that this clause must be read to preserve only state claims that address obligations different from those created under the Act because any other reading would eviscerate the strict filing and charging duties imposed by the Act. *Marcus*, 938 F. Supp. at 1168; *Kellerman v. MCI Telecomms. Corp.*, 493 N.E.2d 1045, 1051 ("it is implausible to think that section 414 of the Act preserved all [s]tate-law remedies affecting interstate telephone carriers no matter how repugnant those [s]tate laws are to the purposes and objectives of Congress"), *cert. denied*, 479 U.S. 949 (1986). As other courts have observed, the Act cannot be read " 'to destroy itself.' " *Marcus*, 938 F. Supp. at 1168 (quoting *Texas & Pac. R.R. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 446, 27 S. Ct. 350, 357-58, 51 L. Ed. 553 (1907)). Hardy's claims implicate not only the advertising practices of AT&T Wireless but also the reasonableness of the carrier charging the tariff rate in light of those practices. His claims are therefore covered by the Act and are preempted.

Affirmed.

GROSSE and BECKER, JJ., concur.