[Nos. 24922-1-III; 24623-0-III;   Division Three.   July 17, 2008.]
     25637-5-III.

THELMA L. DRASZT, *as Trustee, Appellant*, v. DENA MARIE NACCARATO ET AL., *Respondents*.

THELMA L. DRASZT, *as Trustee, Appellant*, v. MATTIE A. KIVETT, *Respondent*.

---

*John Montgomery* (of *Waldo Schweda & Montgomery, PS*), for appellant.

*Robert A. Dunn* and *Michael R. Tucker* (of *Dunn & Black, PS*), for respondents.

¶1 SWEENEY, J. — The essential question raised by this appeal is whether the trial court's findings of fact support its conclusions of adverse possession and mutual recognition and acquiescence to a disputed strip of land. We conclude that they do and affirm the judgment conferring ownership in the disputed strip of land to the adverse possessor.

## FACTS

¶2 Jay and Dena Naccarato owned the Farmer's Market and Garden Center (Market) and underlying property on Sprague Avenue in Spokane, Washington, from 1947 until 2000. Mattie (Long) Kivett (and her late husband) owned Rocky Café (Café), the business that borders the Market to the east.

¶3 The business owners jointly purchased the lot between their businesses (Lot 9) in 1983. They divided Lot 9 in "half" by quitclaim deeds in 1986. Mr. and Ms. Naccarato got the west half of Lot 9. And Ms. Kivett and her husband got the east half of Lot 9. But they did not survey the property. They wanted the Market building to serve as the boundary line. The Market building and fence instead encroached on the Café property by 12 feet.

¶4 Ms. Naccarato later conveyed the Market and underlying property by quitclaim deeds to her grandsons, Michael and Richard Naccarato (the Naccaratos). The deeds purported to convey, in part, "[t]he West One-Half of Lot 9." Clerk's Papers of Appeal No. 24922-1-III (CP) at 94-95. Ms. Kivett sold the Café and underlying property to Robert Brewer and Gerald Frazer in 1989. Mr. Brewer and Mr.

Frazer sold the Café and property to Thelma Draszt and her husband in 1995. The Draszts transferred the Café to the Draszt Revocable Living Trust in 1998. Deeds to Ms. Draszt or her trust purported to convey, in part, "[t]he East half of Lot 9." CP at 43.

¶5 The Naccaratos and Ms. Draszt used the property they occupied continuously and without interruption.

¶6 Ms. Draszt sued the Naccaratos to quiet title to the east half of Lot 9 after a disagreement over the Café's parking lot. The Naccaratos asserted adverse possession and mutual recognition and acquiescence. Ms. Draszt moved for summary judgment. The court denied her motion. The court made appropriate findings of fact and conclusions of law following a trial and entered judgment in favor of the Naccaratos. Ms. Draszt appeals the judgment and the order denying summary judgment.

¶7 Ms. Draszt also sued Ms. Kivett for damages for breach of warranties in the statutory warranty deed that transferred Ms. Kivett's interest in the Café and underlying property to Mr. Brewer and Mr. Frazer. Ms. Kivett moved for summary judgment on the breach of warranty claim. The trial court granted her motion.

¶8 Ms. Draszt also appealed the trial court's order dismissing her breach of warranty claim against Ms. Kivett. But she advised us during oral argument that she will abandon and dismiss that appeal. So the only appeals before us are Ms. Draszt's appeals from the trial court's judgment in favor of the Naccaratos and the order denying summary judgment.

## DISCUSSION

### Denial of Summary Judgment

¶9 Ms. Draszt first argues that the court should have granted her motion for summary judgment. But we will not review the denial of a summary judgment motion where the trial court denies the motion because of material facts and

a trial follows on those issues. *Caulfield v. Kitsap County*, 108 Wn. App. 242, 249 n.1, 29 P.3d 738 (2001). Instead, the "losing party must appeal from the sufficiency of the evidence presented at trial." *Id.*

¶10 Here, the trial court denied Ms. Draszt's motion for summary judgment on the Naccaratos' counterclaims. It then held a bench trial on Ms. Draszt's quiet title action and the Naccaratos' counterclaims. The court entered judgment in the Naccaratos' favor. Ms. Draszt therefore cannot appeal the order denying her summary judgment motion. Instead, she must challenge either the sufficiency of the evidence to support the court's findings or the sufficiency of the findings to support the court's conclusions of law.

SUFFICIENCY OF THE EVIDENCE

¶11 Ms. Draszt contends that the evidence is insufficient to support the necessary elements of adverse possession or mutual recognition and acquiescence. She has not, however, assigned error to any of the court's findings of fact. She simply argues facts and inferences she suggests the court should have derived from the evidence. But unchallenged findings are verities on appeal. *Zunino v. Rajewski*, 140 Wn. App. 215, 220, 165 P.3d 57 (2007).

¶12 Here, the court entered findings of fact and conclusions of law. Ms. Draszt must assign error to specific findings and then show that the record does not support them. *Standing Rock Homeowners Ass'n v. Misich*, 106 Wn. App. 231, 243, 23 P.3d 520 (2001). She needs to point to the deficiencies she urges; bare conclusory allegations that evidence is insufficient is not enough. We will not search the record for alleged deficiencies. We require specific assignments of error. RAP 10.3(g).

¶13 We can then only review whether the findings support the trial court's conclusions of law and judgment. *Sunnyside Valley Irrigation Dist. v. Dickie*, 111 Wn. App. 209, 214, 43 P.3d 1277 (2002), *aff'd*, 149 Wn.2d 873, 73 P.3d 369 (2003). We review conclusions of law de novo. *Zunino*, 140 Wn. App. at 220.

ADVERSE POSSESSION

■ ■ ¶14 To establish title by adverse possession, the claimant must prove his possession was actual and uninterrupted, open and notorious, hostile, and exclusive for more than 10 years. *ITT Rayonier, Inc. v. Bell*, 112 Wn.2d 754, 757, 774 P.2d 6 (1989). The construction and maintenance of a structure partially on the land of another almost necessarily is exclusive, actual and uninterrupted, open and notorious, hostile, and made under a claim of right. *Reitz v. Knight*, 62 Wn. App. 575, 582, 814 P.2d 1212 (1991).

■ ¶15 Here, the trial court's findings show that the Market's building was on the disputed portion of Ms. Draszt's half of Lot 9 for the requisite 10 years. "Where there is privity between successive occupants holding continuously and adversely to the true title holder, the successive periods of occupation may be tacked to each other to compute the required 10-year period of adverse holding." *Roy v. Cunningham*, 46 Wn. App. 409, 413, 731 P.2d 526 (1986). Privity is established when the disputed property is transferred by deed and physically turned over. *See Shelton v. Strickland*, 106 Wn. App. 45, 53, 21 P.3d 1179 (2001). Lot 9 was divided in 1986. The Market building and its adjoining fence line have encroached approximately 12 feet over Ms. Draszt's half of Lot 9 since then. The building has been in its present location since before 1947. And the fence line has existed since before 1986. Both are on the disputed 12-foot strip of land.

¶16 Jay and Dena Naccarato owned the Market from 1947 until 2000. Ms. Naccarato then transferred the business and property to her grandsons, Michael and Richard Naccarato, by quitclaim deeds. The Naccarato family has then adversely possessed the disputed strip of land for nearly 20 years. They have shown the necessary privity to establish adverse possession for the requisite 10 years. *Roy*, 46 Wn. App. at 413.

MUTUAL RECOGNITION AND ACQUIESCENCE

¶17 Ms. Draszt next contends that the trial court erred when it concluded that the Naccaratos have a right to the disputed property by the equitable doctrine of mutual recognition and acquiescence. Again, she asserts that the trial court's conclusion is not supported by findings.

¶18 The elements of the doctrine of mutual recognition and acquiescence are well settled:

> (1) The line must be certain, well defined, and in some fashion physically designated upon the ground, *e.g.*, by monuments, roadways, fence lines, etc.; (2) in the absence of an express agreement establishing the designated line as the boundary line, the adjoining landowners, or their predecessors in interest, must have in good faith manifested, by their acts, occupancy, and improvements with respect to their respective properties, a mutual recognition and acceptance of the designated line as the true boundary line; and (3) the requisite mutual recognition and acquiescence in the line must have continued for that period of time required to secure property by adverse possession.

*Lamm v. McTighe*, 72 Wn.2d 587, 593, 434 P.2d 565 (1967).

¶19 The Naccaratos had to prove that both parties acquiesced in the line for the period required to establish adverse possession—10 years. *Waldorf v. Cole*, 61 Wn.2d 251, 255, 377 P.2d 862 (1963).

¶20 The findings here support the court's conclusion of mutual recognition and acquiescence.

¶21 First, the east wall of the Market building, which the court found to be encroaching onto Ms. Draszt's half of Lot 9, is "well defined." CP at 206. So is the fence line that stretches from the southeast corner of the building to the southernmost corner of the lot.

¶22 Next, the parties must agree or acquiesce in the boundary, either expressly or by implication. *Houplin v. Stoen*, 72 Wn.2d 131, 137, 431 P.2d 998 (1967). The purported boundary must be recognized by the parties as a true

boundary and not just a barrier. *Heriot v. Smith*, 35 Wn. App. 496, 501, 668 P.2d 589 (1983).

¶23 The trial court found that Ms. Draszt, the Naccaratos, and their predecessors have continuously used the property they occupy without interruption. And the predecessors intended to make the east wall of the Market building the property line when they divided Lot 9. These findings support the conclusion that the parties mutually recognized and agreed to the boundary line.

¶24 Finally, the Naccaratos, Ms. Draszt, and their predecessors have treated the east wall and fence line as a boundary since 1986, which is more than 10 years ago.

¶25 The court's unchallenged findings then support its conclusion of mutual recognition and acquiescence.

WAIVER

¶26 Ms. Draszt contends that the trial court erred when it concluded that the Naccaratos had not waived their claim to part of the east half of Lot 9 by their answers to her complaint and requests for admission. The court concluded that the Naccaratos argued that the boundary line, described by Ms. Draszt's deed, did not match the real boundary line.

¶27 We generally will not decide an issue if the appellant does not support her argument with citation to authority. *Hardy v. Claircom Commc'ns Group, Inc.*, 86 Wn. App. 488, 495 n.4, 937 P.2d 1128 (1997). Here, Ms. Draszt does not cite to authority to support her contention that the Naccaratos waived their claims. And the record shows that the Naccaratos continuously asserted an interest in the disputed property. The trial court's conclusion of law that the Naccaratos did not waive their claims is amply supported by the record and the Naccaratos' conduct.

BURDEN OF PERSUASION—CLEAR, COGENT, AND CONVINCING

¶28 Ms. Draszt next argues that the trial court erred by applying the wrong burden of proof (burden of

persuasion). CP at 206 (Conclusion of Law 4). She is correct as to mutual recognition and acquiescence. The correct burden of persuasion on mutual recognition and acquiescence is clear, cogent, and convincing. *Lilly v. Lynch*, 88 Wn. App. 306, 316-17, 945 P.2d 727 (1997).

■ ■ ¶29 But there are two problems with Ms. Draszt's argument. First, adverse possession requires only a showing to the preponderanace of the evidence. *Varrelman v. Blount*, 56 Wn.2d 211, 211-12, 351 P.2d 1039 (1960). And we have already concluded that the Naccaratos have met the necessary elements to prove adverse possession. Second, Ms. Draszt does not challenge any of the findings as unsupported by substantial evidence. And so any statement (or misstatement) by the trial judge as to the appropriate burden of persuasion seems to us to be harmless. *See Thomas v. French*, 99 Wn.2d 95, 104, 659 P.2d 1097 (1983) ("[E]rror without prejudice is not grounds for reversal. Error will not be considered prejudicial unless it affects, or presumptively affects, the outcome of the trial." (citation omitted)). There is no suggestion here that, if the court had identified the correct standard of proof, the outcome would have been different. And we decline to conclude that it might have been.

ATTORNEY FEES

¶30 Both parties request fees on appeal. We conclude that the issues raised were not frivolous and we deny fees. And moreover, the cross appeal was subsequently dismissed.

## CONCLUSION

¶31 As to appeal no. 24922-1-III, we affirm the judgment of the trial court and deny fees. We dismiss appeal no. 24623-0-III as moot because Ms. Draszt appealed from the sufficiency of the evidence presented at trial. And we grant Ms. Draszt's motion to withdraw appeal no. 25637-5-III.

KULIK, A.C.J., and BROWN, J., concur.