**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| SUSAN WOHLLEBEN, | No. 56591-9-II |
| Appellant, | Consolidated with<br>No. 57071-8-II |
| v. | UNPUBLISHED OPINION |
| JOAN JAHNSEN and JAMES JAHNSEN, SR., a married couple; and JORDAN DUNCAN and CORRINE DUNCAN, a married couple, | |
| Respondents. | |

MAXA, P.J. – Susan Wohlleben appeals the trial court's grant of summary judgment in favor of her next-door neighbors James and Joan Jahnsen and Jordan and Corinne Duncan (collectively Jahnsen) regarding her adverse possession and prescriptive easement claims, the court's reformation of an easement granted by Wohlleben's predecessor, and the court's order that she keep her property a minimum of five feet away from the boundary of her property. The case arose from a dispute over Wohlleben's right to use Jahnsen's driveway, which is located along the boundary line between Jahnsen's property and Wohlleben's property.

The kitchen to Wohlleben's house can be accessed through a door and a concrete "landing" that is connected to the house and abuts Jahnsen's driveway. The landing is 16 feet long and extends approximately a foot and a half onto Jahnsen's property. Wohlleben claims that she acquired that foot and a half strip through adverse possession. Wohlleben also claims that she acquired a prescriptive easement for temporary parking and loading/unloading at her kitchen door.

On the boundary line between the two properties is a hedge. The stems of the plants that comprise the hedge are on the property line or in some areas are an inch or two onto Jahnsen's property. Wohlleben claims that she acquired a strip of land those few inches wide through adverse possession.

In 1978, Wohlleben's predecessor granted by deed an easement over a portion of her property to one of Jahnsen's predecessors. But it later was discovered that the easement deed described only a triangular area, and there was evidence that the parties intended the easement to cover a portion of the as-built Jahnsen driveway that was on Wohlleben's property.

We hold that (1) the trial court erred in granting summary judgment and dismissing Wohlleben's adverse possession claim regarding the kitchen landing, (2) the trial court did not err in granting summary judgment and dismissing Wohlleben's adverse possession claim regarding the hedge, (3) the trial court did not err in granting summary judgment and dismissing Wohlleben's prescriptive easement claim, (4) the trial court did not err in reforming the legal description in the 1978 easement deed based on undisputed evidence of mutual mistake, (5) the trial court did not err in ordering Wohlleben to keep her property a minimum of five feet away from the surveyed boundary line during the pendency of the case, and (6) the trial court erred in awarding attorney fees to Jahnsen for the adverse possession claim regarding the kitchen landing but not for the other claims.

Accordingly, we affirm all of the trial court's orders except for the summary judgment order on the adverse possession claim regarding the kitchen landing and the award of attorney fees for that claim. We remand for further proceedings on the adverse possession claim regarding the kitchen landing and to recalculate the award of attorney fees.

FACTS

*Background*

Wohlleben's house and property is located at the V-shaped intersection of NW Pennsylvania Avenue (to the east) and NW St. Helens Avenue (to the southwest) in Chehalis. The property has a north-south driveway that exits onto St. Helens Avenue. Jahnsen's house and property is located directly to the north of Wohlleben's property and also is bounded by NW Pennsylvania Avenue (to the east) and NW St. Helens Avenue (to the west).

A paved driveway located on Jahnsen's property runs east to west and exits onto Pennsylvania Avenue. The driveway is along the property line on the south side of Jahnsen's house and on the north side of Wohlleben's house. The driveway is straight from Pennsylvania past the houses, curves slightly to the south, and then curves to the north. The portion of the driveway that curves to the south is on Wohlleben's property.

A concrete landing extends out from a side door to Wohlleben's kitchen and around the side of the house. The landing is connected to the house and abuts the driveway. The landing runs along the driveway for 16 feet.

In the 1960s, both Jansen's driveway and Wohlleben's driveway were paved at the same time. The two driveways were somewhat perpendicular to each other and touched, but were not considered a single driveway.

Wohlleben's property is landscaped by a double row of hedges. The northernmost hedge extends along a portion of Jahnsen's driveway near Pennsylvania Avenue.

Wohlleben bought her property from the estate of Aliz Nelson (Hirsekom) in 2017. Nelson owned the house from 1966 until her passing in 2017. Jahnsen acquired their property in 2018. Previous owners were John Murray and Ethelynd Murray (Henriot) from before 1966 to

3

1993, the Oldroyds from 1993 to 2003, the Greens from 2003 to 2011, the Burtons from 2011 to 2014, and the Gobels from 2014 to 2018.

In 1978, Nelson granted by deed an easement to Ethelynd Murray over a small piece of Nelson's property to allow Murray full use of the driveway that had been built.

Wohlleben and Jahnsen became involved in a dispute over whether Wohlleben had the right to share the use of Jahnsen's driveway. As a result, Wohlleben filed a quiet title action against Jahnsen. Wohlleben asserted claims for adverse possession of a strip of land under the hedge area, a prescriptive easement to use Jahnsen's driveway for ingress and egress and for temporary parking and loading/unloading, and ejectment.

Jahnsen denied Wohlleben's claims and asserted counterclaims for trespass, harassment, adverse possession, and frivolous claims.

*Prescriptive Easement Summary Judgment*

Jahnsen moved for partial summary judgment on the prescriptive easement claim. They submitted several declarations in support of their motion showing that Nelson, Wohlleben's predecessor, rarely if ever used Jahnsen's driveway. Lisa Thomas, one of Nelson's daughters, grew up on the Wohlleben property and visited her mother frequently before she passed away. She testified that her family used the driveway on very few occasions to bring items into the kitchen, and only after asking the neighbor's permission.

The Oldroyds (1993-2003) testified that they did not remember Nelson ever using their driveway. Harry Green (2003-2011) testified that Nelson never used their driveway. The Greens parked their vehicles in the driveway, which would have made Nelson's use of the driveway nearly impossible. John Burton (2011-2014) testified that Nelson never once used

4

their driveway. Her use would have been impossible because they also used the driveway to park their cars.

Rick Goble (2014-2018) testified that they let Nelson use their driveway a handful of times while she lived there. Many days it would have been impossible for Nelson to use the driveway because his wife parked there. After Nelson passed away, the Gobles gave permission to her family to use the driveway to remove items from the house. After Wohlleben moved in, they allowed her to use their driveway occasionally. Wohlleben thought it was a shared driveway, but Goble informed her that it was their driveway.

Sandee Welsh has lived in the house to the north of Jahnsen's house for the last 40 years. She was a close friend of Nelson and often drove with her into or out of Nelson's St. Helens driveway. She never drove with Nelson on Janson's driveway.

Wohlleben submitted a declaration in opposition to summary judgment regarding her prescriptive easement claim. She stated that before purchasing the property she met with Lisa Thomas, Nelson's daughter. Thomas told her that the property could be accessed using Jahnsen's driveway, her family had used the driveway as long as they lived there, and the driveway was shared. Wohlleben stated that her house appeared to be designed to use Jahnsen's driveway to unload groceries at the kitchen door as indicated by the concrete landing that ran from the driveway to the kitchen door. Wohlleben also stated that it was dangerous to back down her driveway onto St. Helens Street.

In reply, Jahnsen submitted declarations from Nelson's sons, John Nelson and Charly Nelson. Both testified that Nelson used the driveway occasionally with permission while the Murrays lived next door, but never after Mrs. Murray no longer lived there. Both stated that they sometimes used the driveway for a few minutes to unload things.

5

Following a continuance of the motion to allow depositions to be taken, Wohlleben's

counsel submitted a declaration stating the following:

> 7. The deposition testimony did not produce evidence that the driveway at issue in this litigation, which runs between the Defendants' house and the Plaintiff's house, was regularly used by the Plaintiff's predecessor for ingress and egress. Therefore, *Plaintiff concedes that summary judgment is appropriate on the claim of prescriptive easement for ingress and egress over that driveway.*
>
> 8. However, the deposition testimony did produce evidence of a less intensive use of the driveway by Plaintiffs predecessor for limited and incidental access for the purpose of turning around and for the additional purpose of short-term parking for unloading onto and across a landing into the kitchen of Plaintiff's house.

Clerk's Papers (CP) at 230 (emphasis added). Wohlleben also submitted a declaration in which

she explained that the most reasonable way to unload groceries at her house was to park in the

Jahnsen's driveway and unload them at the kitchen door.

The trial court granted Jahnsen's summary judgment motion and dismissed Wohlleben's

prescriptive easement claim. The court also found that the claim was frivolous and brought

without reasonable cause for purposes of RCW 4.84.185.

*Order Directing Wohlleben to Remove Personal Property*

While the prescriptive easement summary judgment motion was pending, Jahnsen filed a

motion to force Wohlleben to remove her personal property from their driveway. The motion

stated that Wohlleben had been parking her car on a portion of the driveway to block them from

using it and had placed a pile of boards lashed with blackberry thorns next to the driveway. A

subsequent declaration stated that Wohlleben had allowed workers to access her property

through Jahnsen's driveway.

The trial court entered an order directing Wohlleben to remove any personal property

from Jahnsen's driveway and to keep all personal property a minimum of five feet from the

property line "during the pendency of this matter." CP at 292.

6

*Adverse Possession Summary Judgment*

Jahnsen also filed a summary judgment motion regarding Wohlleben's adverse possession claims.

Jahnsen submitted a declaration from John Gunnar Foss, who surveyed the area at issue. Foss stated that the concrete landing running from Wohlleben's kitchen door extended a foot and a half onto Jahnsen's property. Below is a photograph of Foss standing on the property line:



CP at 511.

Regarding the hedge, Foss stated that the top of the hedge was clearly over both properties and the stems of the plants comprising the hedge were either right on the property line or in some areas an inch or two on Jahnsen's property.

Foss also submitted a declaration that refuted the claim in Wohlleben's complaint that a portion of a driveway extension that had been built was on her property. Foss stated that his survey showed that none of the driveway extension or any other structure was on Wohlleben's property.

In addition, Jahnsen relied on the previously submitted declarations of John Nelson and Harry Green. John Nelson said that both his mother and the neighbors took care of the upkeep on the plants growing on the strip of property adjacent to the driveway. The neighbors trimmed the plants so their vehicles would not be scratched as they drove on their driveway. Green testified that during the time he lived at the Jahnsen property (2003-2011), "I trimmed my side of the hedge and [Nelson] trimmed her side and there was never had any discussion about who owned the hedge." CP at 273.

In opposition, Wohlleben submitted a declaration in which she emphasized that the landing adjacent to her kitchen door that extended into the driveway appeared to be original to the house, making it many decades old. She also stated that the hedge straddled the boundary line and clearly had existed for many years. Finally, she alleged that a portion of the driveway extended onto her property, and removed her permission for Jahnsen to use that portion.

Wohlleben also submitted the declaration of Melvin Canfield, who was a gardener for Nelson. He testified that the hedge at issue, which was designed to include two interlocking rows of shrubs, was part of Nelson's showpiece garden and belonged to her. Nobody, including the neighbors, ever claimed that the garden belonged to them. Canfield stated that the hedge was an integral part of the landscaping of Nelson's house, and all work done in that area was at Nelson's direction and under her supervision.

In reply, Jahnsen submitted a second declaration from Canfield. He testified that the south side of the hedge was maintained by Nelson and that he would trim the north side during the growing season for approximately three years before Nelson's death. He did not know who trimmed the north side of the hedge at other times. Canfield also testified that Nelson never told him that she owned the north side of the hedge.

Joan Jahnsen submitted a declaration stating that since they moved into their house in November 2018, neither Wohlleben nor anyone else had trimmed the north side of the hedge.

The trial court granted the Jahnsen's summary judgment motion and dismissed Wohlleben's adverse possession and ejectment claims. The court also found that the claims were frivolous and brought without reasonable cause for purposes of RCW 4.84.185.[1]

*Motion to Reform 1978 Easement Deed*

The trial court subsequently entered a stipulated order allowing Jahnsen to amend their answer and counterclaims and to hear expedited argument on Jahnsen's motion to reform the 1978 easement deed. In the amended answer, Jahnsen asserted a counterclaim to reform the deed granting an easement from Nelson to Murray to conform to the as-built driveway.

Jahnsen then filed a motion to reform the legal description in the easement deed. In support, Jahnsen filed a second declaration of John Nelson. He recounted how as a child he watched workers pave the two driveways, simply following the paths of the existing dirt/gravel driveways. He stated that the pavement today is in the same location as originally placed in 1967-68. John Nelson stated that his family considered all of the relatively level driveway above their driveway to belong to the neighbors.

Regarding the easement, John Nelson testified as follows:

---

[1] Wohlleben appealed the trial court's summary judgment orders and the order directing her to remove property. But Wohlleben subsequently withdrew the appeal and this court dismissed it.

> My mother granted an easement to Mrs. (Murray) Henriot in 1978. I am informed by counsel that it has been learned recently that the 1978 easement legal description, describes a triangle represented by the pink ribbon shown on Exhibit 1. *If this correctly shows the property described by the legal description then that description was a mutual mistake.* I know that my mother's intent was that the neighbor, starting with Murray's/Henriot have use of the curving as-built asphalt driveway and that that was the area my mother intended to grant use of by the easement. Further proof that the legal description is a mistake is the fact that the triangle shown on Exhibit 1 doesn't make any sense, because it does not add any measurable value to the use of the Murray/Henriot driveway. *I know that my mother, in granting the easement, was trying to assure that the neighbors, starting with Mrs. Henriot could have full use of the driveway that they had built and used for a long time.* The triangle does not accomplish that and so I conclude that the mistake was in the drafting of the easement.

CP at 613 (emphasis added).

Jahnsen also submitted a third declaration of Foss, the surveyor. He drafted a new map and legal description of the easement based on John Nelson's declaration and to conform the 1978 easement to Jahnsen's as-built driveway.

In response, Wohlleben argued that Jahnsen had submitted no admissible evidence regarding the intent of the parties to the easement. She claimed that John Nelson's recollection was not sufficient. In addition, Wohlleben argued that there was no evidence of mutual mistake – that the parties intended the easement to conform to the driveway pavement.

The trial court granted Jahnsen's motion to reform the legal description of the easement deed. The court specified the new legal description in the order.

*Award of Attorney Fees*

Jahnsen filed a motion for the award of attorney fees based on frivolous claims and based on RCW 7.28.083(3), which allows a court to award attorney fees to the prevailing party in adverse possession actions. The trial court awarded Jahnsen $29,219.43 in attorney fees and costs under RCW 4.84.185 for defending against the frivolous adverse possession, prescriptive

10

easement, and ejectment claims. In the alternative, the court awarded Jahnsen $11,687.77 in attorney fees and costs under RCW 7.28.083(3) for defending against the adverse possession claims.

*Subsequent Proceedings*

In January 2022, the parties stipulated to the dismissal of Jahnsen's remaining counterclaims. The stipulation preserved Wohlleben's claims and right to appeal prior motions and attorney fees. Wohlleben then filed a notice of appeal, challenging the two summary judgment orders and the order directing Wohlleben to remove her personal property within five feet of the boundary line.

In April, Jahnsen filed a motion for contempt because Wohlleben was constructing a fence that encroached on their property. Wohlleben argued that the trial court's authority was limited because the case was on appeal and that the order directing her to remove property only functioned as a temporary injunction and was not reduced to a judgment.

The trial court concluded that its order remained in effect and the court had jurisdiction to enforce the order, but ruled that the violation was not so egregious to find Wohlleben in contempt. Wohlleben filed a notice of appeal regarding this order.

ANALYSIS

A.      SUMMARY JUDGMENT STANDARD

We review a trial court's decision on a summary judgment motion de novo. *Sartin v. Estate of McPike*, 15 Wn. App. 2d 163, 172, 475 P.3d 522 (2020). We view all the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Id.* Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; CR 56(c).

11

The party moving for summary judgment bears the initial burden to show there is no genuine issue of material fact. A moving defendant can meet this burden by demonstrating the plaintiff cannot support his claim with any evidence. After the defendant has made such a showing, the burden shifts to the plaintiff to present specific facts that reveal a genuine issue of material fact. Summary judgment is appropriate if a plaintiff fails to show sufficient evidence that creates a question of fact about an essential element on which he or she will have the burden of proof at trial.

*Sartin*, 15 Wn. App. 2d at 172 (citations omitted).

B.      ADVERSE POSSESSION

Wohlleben argues that the trial court erred in granting summary judgment and dismissing her adverse possession claims regarding the areas where the kitchen landing and the hedge encroached on Jahnsen's property.  We agree regarding the kitchen landing but disagree regarding the hedge.

1.    Legal Principles

To establish adverse possession of a parcel of land, a claimant is required to demonstrate that the possession was (1) exclusive, (2) actual and uninterrupted, (3) open and notorious, and (4) hostile, for a period of 10 years.  *Ofuasia v. Smurr*, 198 Wn. App. 133, 143, 392 P.3d 1148 (2017).  A claimant can rely on the use of a predecessor in interest to satisfy the 10-year requirement.  *Acord v. Pettit*, 174 Wn. App. 95, 103, 302 P.3d 1265 (2013).  The party claiming adverse possession bears the burden of proving each element.  *Maier v. Giske*, 154 Wn. App. 6, 18, 223 P.3d 1265 (2010).

2.    Adverse Possession of Kitchen Landing

Wohlleben argues that questions of fact exist as to whether she has established adverse possession of Jahnsen's property to the extent the kitchen landing encroaches on the driveway. She argues that the fact that the kitchen landing actually occupies a portion of Jahnsen's property

is sufficient to create questions of fact regarding all the elements of adverse possession.  We agree.

Wohlleben relies on *Draszt v. Naccarato*, in which the court stated, "The construction and maintenance of a structure partially on the land of another almost necessarily is exclusive, actual and uninterrupted, open and notorious, hostile and made under a claim of right."  146 Wn. App. 536, 542, 192 P.3d 921 (2008).  In that case, a commercial building that housed a farmer's market and garden center had existed since 1947 encroached on the adjoining property by 12 feet.  *Id.* at 539.  The court affirmed the trial court's finding of adverse possession because the building had been on the disputed portion of property for more than 10 years and there was privity between subsequent owners.  *Id.* at 542.

In *Shelton v. Strickland*, the court made the same statement as in *Draszt* about adverse possession when a structure has been constructed and maintained on the land of another.  106 Wn. App. 45, 51, 21 P.3d 1179 (2001).  In that case, a shed that encroached on adjoining property for many years had been used as a potting shed, a painting studio, and an office.  *Id.* at 48-49.  Addressing only the notorious requirement, the court stated that "there were certainly acts of ownership sufficient to prove that any reasonable person would assume that [the person who built the shed] was the owner."  *Id.* at 52.

Both *Draszt* and *Shelton* relied on *Reitz v. Knight*, 62 Wn. App. 575, 814 P.2d 1212 (1991).  In that case, the eaves of the defendant's house extended seven inches over the boundary line with his neighbor.  *Id.* at 582.  The court stated, "Such encroachment almost necessarily is exclusive, actual and uninterrupted, open and notorious, hostile and made under a claim of right."  *Id.*  As a result, the court found adverse possession as a matter of law.  *Id.* at 583-84.

Here, as in *Draszt*, *Shelton,* and *Reitz*, the kitchen landing physically occupied a strip of Jahnsen's property. The undisputed evidence was that the kitchen landing extended a foot and a half onto Jahnsen's property for a distance of 16 feet down the driveway. And the landing was connected to Wohlleben's house. Further, there is at least an inference that the landing has been in that place for far more than 10 years. As a result, we conclude that questions of fact exist regarding each of the elements of adverse possession.

We hold that the trial court erred in granting summary judgment and dismissing Wohlleben's adverse possession claim regarding the kitchen landing.

3.    Adverse Possession of the Hedge

Wohlleben argues that she has established adverse possession of Jahnsen's property up to the north trim line of the hedge. She argues that the hedge essentially acted as a fence, excluding entry beyond the hedge. She again relies on *Draszt*, suggesting that a landscaping feature is similar to a "structure." We disagree.

However, the undisputed evidence was that the top of the hedge was clearly over both properties and the stems of the plants comprising the hedge were either right on the property line or in some cases an inch or two on Jahnsen's property. Wohlleben acknowledged that the hedge straddled the boundary line. " '[A] tree, standing directly upon the line between adjoining owners, so that the line passes through it, is the common property of both parties, whether marked or not.' " *Herring v. Pelayo*, 198 Wn. App. 828, 836, 397 P.3d 125 (2017) (quoting *Happy Bunch LLC v. Grandview N. LLC*, 142 Wn. App. 81, 93, 173 P.3d 959 (2007). This means that the hedge was akin to a "boundary tree" that was co-owned by Wohlleben and Jahnsen.

14

Co-ownership of the hedge is consistent with evidence regarding how the parties maintained it. John Nelson stated that both his mother and the neighbors took care of the upkeep on the hedge. The neighbors trimmed the plants so their vehicles would not be scratched as they drove on their driveway. Green testified that during the time he lived at the Jahnsen property (2003-2011), "I trimmed my side of the hedge and [Nelson] trimmed her side and there was never had any discussion about who owned the hedge." CP at 273.

Canfield, Nelson's gardener, stated that he would trim the north side during the growing season for approximately three years before Nelson's death but did not know who trimmed the north side of the hedge at other times. Canfield also testified that Nelson never told him that she owned the north side of the hedge.

The possibility that the hedge was planted on Wohlleben's property or on the property line and then grew to encroach a few inches onto Jahnsen's property does not support Wohlleben's adverse possession claim. The court in *Happy Bunch* expressly rejected the rule adopted in a Colorado case that trees growing across the property line belong to the party that planted them. 142 Wn. App. at 93. The court stated,

> In essence, this rule provides that the boundary between two parcels of real property shifts over time with the natural growth of trees planted along the boundary. . . . For us to hold that a Washington landowner can effect such a boundary line adjustment would be to create an entirely new theory of adverse possession without a basis in either the statutory or common law of this state. . . . We are unwilling to recognize an entirely new theory of adverse possession under Washington law.

*Id.* at 92-93.

We hold that the trial court did not err in granting summary judgment in favor of Jahnsen regarding adverse possession of the hedge.

15

C.     PRESCRIPTIVE EASEMENT

Wohlleben argues that the trial court erred in granting summary judgment on her prescriptive easement claim.  We disagree.

A prescriptive easement arises when one person uses a portion of another person's land for a period of 10 years and that use (1) was open and notorious, (2) was continuous or uninterrupted, (3) occurred over a uniform route, (4) was adverse to the property owner, and (5) occurred with the owner's knowledge at a time when the owner was able to assert and enforce his or her rights.  *Gamboa v. Clark*, 183 Wn.2d 38, 43, 348 P.3d 1214 (2015).  As with adverse possession, a claimant can rely on the use of a predecessor in interest to satisfy the 10-year requirement.  *Lee v. Lozier*, 88 Wn. App. 176, 185, 945 P.2d 214 (1997).

Wohlleben acknowledged in the trial court that she could not establish a prescriptive easement regarding use of Jahnsen's driveway for ingress and egress.[2]  Instead, she claims that there was a question of fact as to whether she had a limited prescriptive easement for loading and unloading at her kitchen door.

Wohlleben did not purchase her property until 2017, so she can meet the 10-year requirement only if she can show that Nelson or some other predecessor in interest satisfied the elements of a prescriptive easement.  But there was no evidence that Nelson's or her family's use of the driveway for loading and unloading ever was continuous or adverse as required for a prescriptive easement.

John and Charly Nelson both testified that Nelson occasionally used the driveway with permission when the Murrays lived next door, but not after.  Lisa Thomas testified that her

---

[2] Wohlleben's only "evidence" was her allegation that Thomas – Nelson's daughter – told her that the property could be accessed using Jahnsen's driveway and the driveway was shared.  But this alleged statement clearly was hearsay.  ER 801, 802.

family used the driveway on a few occasions, and only with permission. The testimony of the Oldroyds, Green, and Burton established that Nelson *never* used their driveway from 1993 to 2014. Rick Goble testified that he gave permission for Nelson to use the driveway a handful of times between 2014 and 2017, and let her family use the driveway to remove items from the house after Nelson passed. The only testimony that the driveway ever was used for loading and unloading was the testimony of John and Charly Nelson, who both testified that they sometimes used the driveway to drop off things. But that testimony hardly established continuous or even adverse use.

Wohlleben argues that there is circumstantial evidence to support her prescriptive easement claim: the kitchen landing appears to have been built for the purpose of loading and unloading, the driveway was used for that purpose, and access to the kitchen while carrying groceries is inconvenient and dangerous otherwise. She claims that this circumstantial evidence creates a question of fact.

Wohlleben's evidence may be sufficient to infer that when her house was built the intent was to use the kitchen landing for loading and unloading. And the evidence may be sufficient to infer that such a use would be convenient and reasonable. However, that evidence does not allow an inference that the Jahnsen's driveway actually was used for this purpose on a continuous and uninterrupted basis. And Wohlleben has not presented any evidence that any such use was open and notorious, adverse to the property owner, or lasted for 10 years.

We hold that the trial court did not err in granting summary judgment regarding Wohlleben's prescriptive easement claim.

D.    REFORMATION OF THE EASEMENT DEED

Wohlleben argues that the trial court erred in reforming the 1978 easement deed based on mutual mistake. We disagree.

"A trial court has equitable power to reform an instrument if there is clear, cogent and convincing evidence of a mutual mistake or a unilateral mistake coupled with inequitable conduct." *Wilhelm v. Beyersdorf*, 100 Wn. App. 836, 843, 999 P.2d 54 (2000). "Mutual mistake occurs if the intention of the parties is identical at the time of the transaction and the writing executed by them does not express that intention." *Id.*

The only evidence Jahnsen submitted in support of reformation was the declaration of John Nelson. He asserted that the legal description in the deed, which described a triangular area, was a mutual mistake. He stated,

> I know that my mother's intent was that the neighbor, starting with Murray's/Henriot have use of the curving as-built asphalt driveway and that that was the area my mother intended to grant use of by the easement. Further proof that the legal description is a mistake is the fact that the triangle shown on Exhibit 1 doesn't make any sense, because it does not add any measurable value to the use of the Murray/Henriot driveway. *I know that my mother, in granting the easement, was trying to assure that the neighbors, starting with Mrs. Henriot could have full use of the driveway that they had built and used for a long time.* The triangle does not accomplish that and so I conclude that the mistake was in the drafting of the easement.

CP at 613 (emphasis added).

Wohlleben did not submit any contrary evidence. And she did not dispute that the triangular area described in the deed does not encompass the entire portion of the driveway that curved onto her property.

On appeal, Wohlleben argues that the trial court did not have the authority to relocate the easement without the consent of all parties. *See Crisp v. VanLaecken*, 130 Wn. App. 320, 323-

18

25, 122 P.3d 92 (2005). However, the trial court here did not relocate the easement. The court reformed the legal description of the deed based on mutual mistake.

Wohlleben also argues that Jahnsen's evidence regarding deed reformation – relying on the use of the as-built driveway – is the same as her circumstantial evidence regarding the adverse use of the driveway for loading and unloading based on the as-built condition of the kitchen landing. But Jahnsen was required to prove a mutual mistake, which they did through John Nelson's testimony as well as the historical use of the driveway. Wohlleben was required to prove continuous use of the driveway for loading and unloading for a period of 10 years, which she could not do.

We hold that trial court did not err in reforming the 1978 easement deed.[3]

E.     ORDER RESTRICTING WOHLLEBEN'S USE OF HER PROPERTY

Wohlleben argues that the trial court erred in entering the order requiring her to keep her personal property at last five feet from the property line. We disagree. She also argues that the trial court did not have the authority to enforce the order once the case was on appeal. We decline to consider this issue.

1.     Authority to Issue Order

A trial court has broad discretion to fashion equitable remedies. *Carbon v. Spokane Closing & Escrow Inc.,* 135 Wn. App. 870, 878, 147 P.3d 605 (2006). We review a trial court's equitable remedies for abuse of discretion. *Kave*, 198 Wn. App. at 819.

Jahnsen denied that Wohlleben had the right to use their driveway. And Jahnsen's counterclaims included for trespass and harassment. However, Jahnsen submitted evidence that

---

[3] The procedure in the trial court was somewhat unusual in that this issue was decided on an expedited motion rather than on a summary judgment motion. But Wohlleben did not challenge the procedure in the trial court and does not challenge the procedure on appeal.

Wohlleben was parking her car in the driveway area and was placing materials lashed with blackberry thorns immediately adjacent to the property line as a means of harassing them.

We hold that the trial court had the authority, in its discretion, to order Wohlleben to keep her personal property at last five feet from the property line during the pendency of the case to maintain the status quo and to avoid further conflict between the parties.

2.    Authority to Enforce Order

Wohlleben argues that even though the trial court denied Jahnsen's motion for contempt, it did not have the authority to enforce the order that she keep her personal property at last five feet from the property line.

Under RAP 3.1, "[o]nly an aggrieved party may seek review by the appellate court." For a party to be aggrieved, the decision appealed must affect the party's property or pecuniary rights. *Randy Reynolds & Assoc. v. Harmon*, 193 Wn.2d 143, 150, 437 P.3d 677 (2019). Here, Wohlleben prevailed on Jahnsen's motion for contempt. Therefore, she is not an aggrieved party with regard to that motion. Accordingly, we decline to consider this issue.

F.    AWARD OF ATTORNEY FEES

Wohlleben argues that the trial court improperly awarded Jahnsen their reasonable attorney fees. We disagree except for the fees awarded on the adverse possession claim regarding the kitchen landing.

1.    Award under RCW 7.28.083

The trial court awarded Jahnsen the portion of their attorney fees incurred in defending against the adverse possession claims under RCW 7.28.083. That statute states,

> The prevailing party in an action asserting title to real property by adverse possession may request the court to award costs and reasonable attorneys' fees. The court may award all or a portion of costs and reasonable attorneys' fees to the

prevailing party if, after considering all the facts, the court determines such an award is equitable and just.

RCW 7.28.083(3).

Wohlleben does not challenge the trial court's authority to award attorney fees to the prevailing party regarding the adverse possession claims. Instead she argues that the award was premature because we should reverse the trial court regarding the adverse possession claims. Wohlleben asserts that the prevailing party after trial will be entitled to recover their attorney fees.

As discussed above, we conclude that the trial court erred in granting summary judgment in favor of Jahnsen on the adverse possession claim regarding the kitchen landing but not regarding the hedge. Therefore, on remand the trial court must award only those fees relating to the hedge claim.

Once the prevailing party is determined in the trial court regarding the kitchen landing claim, the trial court can address whether to award attorney fees to that party under RCW 7.28.083(3). Whether to award attorney fees rests within the trial court's discretion. *See McColl v. Anderson*, 6 Wn. App. 2d 88, 91, 429 P.3d 1113 (2018).

2. Award under RCW 4.84.185

The trial court awarded Jahnsen the attorney fees incurred in defending against Wohlleben's adverse possession, prescriptive easement, and ejectment claims under RCW 4.84.185. Under that statute, the trial court can award attorney fees to the prevailing party if the action was "frivolous and advanced without reasonable cause." RCW 4.84.185.

Wohlleben states that the trial court awarded attorney fees under CR 11, and argues that the award was not warranted under CR 11. That statement is incorrect. The trial court expressly awarded attorney fees under RCW 4.84.185. Therefore, Wohlleben's argument that the trial

21

court erred in awarding attorney fees under CR 11 is immaterial. We decline to address the award of fees under RCW 4.84.185 because Wohlleben does not challenge the court's award on that basis. Therefore, we affirm the trial court's award of attorney fees under RCW 4.84.185 regarding the prescriptive easement and ejectment.

However, as discussed above, Wohlleben's adverse possession claim regarding the kitchen landing is not frivolous. Therefore, despite Wohlleben's failure to argue RCW 4.84.185, we conclude that no attorney fees can be awarded regarding that claim under RCW 4.84.185.

G.      ATTORNEY FEES ON APPEAL

Jahnsen requests that we award them attorney fees on appeal under RAP 18.1, RCW 7.28.083(3), and RCW 4.84.185.

RAP 18.1(a) provides that a party may have a right to recover reasonable attorney fees on appeal if applicable law grants the party the right to do so. As noted above, RCW 7.28.083(3) allows a court to award attorney fees to the prevailing party on an adverse possession claim. This statute applies on appeal. *Workman v. Klinkenberg*, 6 Wn. App. 2d 291, 308-09, 430 P.3d 716 (2018). We conclude above that Jahnsen is the prevailing party on appeal regarding only the adverse possession claim regarding the hedge. Therefore, the court should award Jahnsen the reasonable attorney fees incurred on appeal relating to that claim.

However, RCW 4.84.185 expressly requires a court awarding attorney fees for a frivolous claim to make written findings. Because appellate courts do not make findings, RCW 4.84.185 is not a basis for recovery of fees on appeal. *Hanna*, 193 Wn. App. at 614. Only RAP 18.9(a) allows the recovery of attorney fees for a frivolous appeal. *Id.* Because Jahnsen does not request attorney fees under RAP 18.9(a), we decline to address the award of attorney fees on appeal for any other claims.

CONCLUSION

We affirm all the trial court's orders except for the summary judgment order on the adverse possession claim regarding the kitchen landing and the award of attorney fees for that claim. We remand for further proceedings on the adverse possession claim regarding the kitchen landing and to recalculate the award of attorney fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, P.J.

We concur:

VELJACIC, J.

PRICE, J.

23